Rutgers v. Lucet.

## RUTGERS and others *against* LUCET.(*a*)(*b*)

L., as agent of G., received of R., on the 25th of March, 1796, a bill of exchange for $601, drawn by D. in favor of R. upon F. and accepted by him, which L. promised to return to R. " on demand, or the amount thereof." The bill was received by L. from motives of friendship to R. and to recover the amount for him by obtaining a credit for it to G. against the drawer D. in an arbitration then depending between D. and G. The arbitrators allowed the bill as an item in the account of G. against D. and made an award against G. which was substantially performed by both parties; L., as the agent of G., paying the amount found against the latter to D., and promising him to pay the amount of the bill to R. It appeared that at the time L. received the bill a suit was depending on it against the acceptor F., that interlocutory judgment was obtained in that suit in April term, 1796, and a writ of inquiry was noticed from time to time, but could not be executed in consequence of a failure upon the part of L. to procure the bill so that it could be produced on the execution of such writ. After the last application for the bill in July, 1797, the bail of F., who had previously removed to South Carolina, informed R. that he had failed and could not pay this debt. Afterwards, in August following, the bill was tendered by L. to R., who refused to accept it. It did not appear that L. at any time informed R. that the bill had been allowed to G. by the arbitrators, or that the award had been fulfilled by D., but merely that he told R. that it was still in the hands of the arbitrators.

In an action of assumpsit by R. against L. on his agreement to return the bill on demand or the amount thereof: *held*, that on the performance of the award the bill was discharged and became the property of D.; that R. could no longer maintain an action upon it, and therefore it could not be returned within the *spirit* of the agreement between L. and R.

Also, that the special undertaking of L., although gratuitous, was binding upon him, inasmuch as he had actually entered upon the performance of it.

---

(*a*) The marginal note of Mr. Johnson is as follows : " A. received of B. a bill of exchange drawn by C. and which he promised to return to B. on demand, or pay the amount thereof. Though the bill was received by A. as a matter of courtesy, and was to be used for the benefit of B. yet as A. did not return the bill on demand, nor in due season, he was held, under the circumcumstances of the case, liable to B. for the amount."

(*b*) The memorandum of this case in the MSS. of Judge Radcliff is as follows: "*Lucet ats. Rutgers et al.*—1. An *agent* receiving a bill of exchange as bailee from another, to be credited to his *principal* in other transactions, or to return the bill, is liable for the amount of the bill if such credit be obtained and the means of paying it pass through his hands.

2. A *general bailee* is bound to use a *degree of diligence and attention adequate to the trust reposed in him*, and according to its nature.

Rutgers v. Lucet.

A mere agreement to undertake a trust *in futuro* without compensation is not obligatory; but when once undertaken, and the trust actually entered upon, the bailee is bound to perform it according to the terms of his agreement.

Also; that the special undertaking of L. was *personal*, and he was, therefore, bound by it.

Supposing the bailment to R. to have been *general*, and that he was subject to no special agreement to return the bill or pay the amount, he was still bound to use a due diligence and attention adequate to the trust reposed in him, to perform his engagement with good faith, and neither do nor omit anything other than the nature of the trust required.

THIS was an action of *assumpsit*. The declaration contained six counts, upon an agreement made by the defendant to return a certain bill of exchange, delivered to him by the plaintiffs, and which they alleged was not returned. The cause was tried before the Chief Justice, at the last March circuit, in New York.

The plaintiffs produced the following receipt by the defendant. "Received, New York, 25th March, 1796, of Rutgers, Seaman & Ogden, a draft drawn by Samuel Downing, in their *favor, and accepted by* Royal Flint, bearing date the 14th August, 1795, at 60 days sight, for 601 dollars and 88 cents, which draft I promise to return them on demand, or the amount thereof." It also appeared from the evidence, that the defendant so received the bill for the purpose of obtaining a credit for it to one Greenleaf against [*93] the *drawer, Downing, in an arbitration then depending between them, and, in this manner, to recover the amount for the plaintiffs. The defendant did this from motives of civility and friendship to the plaintiffs. The arbitration related to business in which the defendant acted as the attorney of Greenleaf, by virtue of a power for that purpose from him. The bill was immediately offered to the arbitrators, as an item in the account of Greenleaf against Downing, and allowed by them. Their award was made on the 30th of March, 1796, about five days subsequent to the delivery of the bill to the defendant, and by this award, after crediting the amount of the bill to Greenleaf, he was still ordered to pay to Downing the sum of 523*l*. 3*s*. on the

Rutgers v. Lucet.

20th April, then next. The award on that day was sub-stantially performed by both parties, and the defendant paid that sum to Downing for Greenleaf, and informed Downing that he would also pay the amount of the bill to the plaintiffs. It appeared by a receipt of the plaintiffs, that the defendant paid them on the 2d of December, 1796, *on account of the bill*, the sum of 140 dollars and 84 cents. This sum, how-ever, one of the witnesses, on the part of the defendant stated, was *money lent* by the defendant to the plaintiffs, *at their request*, which they promised to return, in case the bill should not be recovered by the defendant.

It also appeared that at the time the defendant received the bill, there was a suit depending on it against the acceptor, Royal Flint; that interlocutory judgment was obtained in that suit, in April term, 1796, and a writ of inquiry was no-ticed to be executed ; that the plaintiffs then called at the de-fendant's house for the bill, in order to produce it on execut-ing the writ ; that they could not procure it on account of the defendant's absence from home, and the writ was not ex-ecuted ; that in June following, the plaintiffs called again for the same purpose, and could not get the bill for the same reason. They then mentioned the subject to the agent of the defendant, who promised to write for the bill and en-deavor to procure it ; but it was not procured, and the execution *of the writ of inquiry was again prevented. [*94] Some time in June, 1797, the defendant was again called upon for the bill, and, for the first time, was personal-ly seen, when he engaged to procure the bill by a certain day then agreed upon, in order that the writ of inquiry might be executed, before the ensuing July term ; but it was not so procured, and the writ of inquiry was again delayed. In the same month of July, and after the last application for the bill, the bail of Flint, who had previously removed to South Carolina, informed the plaintiffs that he had failed, and could. not pay this debt, if a recovery should be had against him. Afterwards, about the 3d of August following, the bill was tendered by the defendant to the plaintiffs, who refused to accept it. It had previously been deposited with one of the

arbitrators, to be delivered to Downing, in case the award should be complied with on his part, and the arbitrators, supposing it had not been complied with, sent the bill to the defendant. It did not appear that the defendant, at any time, informed the plaintiffs that the bill had been allowed to Greenleaf by the arbitrators, or that the award had been fulfilled by Downing, but merely that he told them that it was still in the hands of the arbitrators.

On this evidence, the judge, at the trial, was of opinion that the plaintiffs were entitled to recover, and a verdict was found accordingly.

There had been a former trial in this cause, when a verdict was found for the defendant; that verdict was set aside, and a new trial awarded, on the ground that the evidence was imperfect, and the merits of the case so obscure as to require a further examination.

A motion was now made to set aside the present verdict, and for a new trial, which was argued by

*B. Livingston* and *Bogert,* for the defendants, and by

*Harison* and *T. L. Ogden,* for the plaintiffs.

*Per Curiam.* 1. The purpose for which the defendant took the bill was fully answered, when it was allowed [*95] by the *arbitrators to the credit of Greenleaf. This appears to have been the object which the parties had in view, and the event on which, according to the tenor of the receipt, the defendant was to pay the money. At the time of obtaining this credit, or, at least, on the performance of the award, the bill was discharged, and became the property of Downing. The defendant could not then return it, within the spirit of his agreement with the plaintiffs, for it could not have been intended that he should have the liberty of returning it when satisfied and paid. The plaintiffs could no longer maintain an action upon it; their debt was changed and converted into a demand against Greenleaf, or against the defendant. Although they might sustain their action against Greenleaf, we think they have also their remedy against the defendant. His stipulation expressed in the receipt was to return the bill, or pay the amount. Here was

a special undertaking, which, although gratuitous on the part of the defendant, was obligatory, for a mandatary or bailee, without compensation, may bind himself to be answerable even for casualties. (Jones on Bailment, 40, 41 ; Ld. Raym. 919 ; 1 Salk. 26.) A mere agreement to undertake a trust, *in futuro*, without compensation, it is true, is not obligatory ; but when once *undertaken*, and the trust actually *entered upon*, the bailee is bound to perform it, according to the terms of his agreement. The confidence placed in him, and his undertaking to execute the trust, raise a sufficient consideration ; a contrary doctrine would tend to injure and deceive his employer, who might be unwilling to consent to the bailment on any other terms.(*a*)

(*a*) It was formerly a question whether any action lay for a total failure to perform a gratuitous executory undertaking. This subject was considered by Sir William Jones, in his elegant essay on the Law of Bailments, and he arrived at the conclusion that the action could be maintained. " Suppose," he says, " for instance, that Robert's cornfields are surrounded by a ditch or trench, in which the water from a certain spring used to have a free course, but which has of late been obstructed by soil and rubbish ; and that Robert informed his neighbor Henry of his intention speedily to clear the ditch, Henry offers and undertakes immediately to remove the obstruction and repair the banks *without reward,* he having business of the same kind to perform on his own grounds : if, in this case, Henry neglect to do the work undertaken, ' and the water, not having its natural course, overflow the fields of Robert, and spoil his corn,' may not Robert maintain his action on the case ? Most assuredly ; and so in a thousand instances of proper bailments that might be supposed, where a just reliance on the promise of the defendant prevented the plaintiff from employing another person, and was consequently the cause of the loss which he sustained ; Year B. 19 Hen. VI. 49 ; for it is, as it ought to be, a general rule, that, for every *damnum injuria datum,* an action of some sort, which it is the province of the pleader to devise, may be maintained ; and, although the *gratuitous* performance of an act be a *benefit* conferred, yet, according to the just maxim of Paulus, *Adjuvari nos, non decipi, beneficio oportet* : D. 13, 6, 17, 3 ; but the *special* damage, not the assumption, is the cause of *this* action ; and, if *notice* be given by the mandatary, *before any damage incurred, and while another person may be employed,* that he cannot perform the work, no process of law can enforce the performance of it. A case in Brooke, made complete from the Year Book, to which he refers, *seems* directly in point ; for, by Chief Justice Fineaux, *it had been adjudged,* that, ' if a man assume to build a house for me by a certain day, and do not build it, *and I suffer damage by his nonfeasance,* I shall have an action on the case, as well as if he had *done it amiss :*' but it is possible that

Rutgers v. Lucet.

In the present case, taking the receipt in connection with
the evidence that the defendant was to obtain a credit for

Fineaux might suppose a consideration, though none be mentioned ; Bro. Abr.
tit. Action, Sur le Case, 72." Jones on Bailments, Am. ed. 1836, p. 56, 57.

The general rule of the Civil Law accords with this view of the subject.
*Sicut autem liberum est, mandatum non suscipere ; ita susceptum consummari
oportet, nisi renunciatum sit. Si susceptum non impleverit, tenetur. Quod
mandatum susceperit, tenetur, etsi non gessissit.* Dig. Lib. 17, tit. 1, l. 5,
§ 1 ; Id. l. 6, § 1 ; Id. l. 22, § 11 ; Inst. Lib. 3, tit. 27, l. 11 ; Pothier, Pand.
Lib. 17, tit. 1, n. 25 to 29 ; Pothier, Contrat de Mandat, n. 38 ; Ayliffe, Pand.
B. 4, tit. 10, p. 478, 479.   *Qui mandatum suscepit, si potest id explere, de-
serere promissum officium non debet ; alioquin, quanti mandatoris intersit,
damnabitur.* Dig. Lib. 17, tit. 1, l. 27, § 2 ; Pothier, Contrat de Mandat, n.
38. *Procuratorem non tantum pro his quæ gessit, sed etiam pro his, quæ
gerenda suscepit, præstare necesse est.* Cod. Lib. 4, tit. 35, l. 11 ; Pothier,
Contrat de Mandat, n. 38. Domat, 1 Domat, B. 1, tit. 15, § 3, art. 1, 12, § 4,
art. 3, 4, 5 ; Pothier, Contrat de Mandat, n. 38 to 42 ;—the modern Code of
France, art. 1991 to 1997 ;—and the Scotch Law, Ersk. Inst. B. 3, tit. 3, § 35,
40 ; 1 Stair, Inst. B. 1, tit. 12, § 9 ; recognize the rule in its full extent. Story
on Bailments, § 164. This is the reason which is given in the Institutes for
the rule : *Mandatum non suscipere cuilibet liberum est ; susceptum autem
consummandum est, aut quam primum renunciandum, ut per semetipsum aut
per alium, eandem rem mandator exequatur.* Inst. lib. 3, 27, 11.

But by the Common Law, *ex nudo pacto non oritur actio ;* Noy. Max. 24 ;
Bro. Max. 336 ; a consideration must intervene to give utility to the agreement.
A declaration, therefore, which stated that the defendant, who was a carpenter,
was retained by the plaintiff, and undertook to repair a certain house, which
he failed to do *per quod* the walls of the plaintiff's house were damaged, was
held bad because there was no allegation of consideration, or that the defen-
dant entered upon the work. *Elsee* v. *Gatward,* 5 T. R. 143. And so where
A. and B. were joint owners of a vessel, and A. voluntarily undertook to get
the vessel insured, but neglected to do so and the vessel was lost, it was held
that no action would lie against A. though B. sustained a damage by the
*nonfeazance. Thorne* v. *Deas,* 4 Johns. R. 84 ; *McGee* v. *Bast,* 6 J. J.
Marsh. 455 ; 2 Wash. 203. See *Smedes* v. *Bank of Utica,* 20 Johns. R. 372,
379. S. C. in error, 3 Cowen, 662, 683. 2 Kent Comm. 569, 570, 571.
Story on Bailment, ed. 1846, § 166, *et seq.*

If however, one enter upon the performance of a gratuitous undertaking,
the confidence induced thereby is a sufficient consideration to create a duty
upon the part of the mandatory to exercise that degree of diligence which is
required of bailees without compensation. 1 Smith Lead. Cas. 96, n. to
*Coggs* v. *Bernard.* Story on Bailments, ed. 1846, § 182 *a.*   2 Kent Comm.
572. He is liable therefore for no act or omission short of gross negligence.
*Stanton* v. *Bell,* 2 Hawks, 145. *Sodowsky* v. *M'Farland,* 3 Dana, 205. *Tra-
cy* v. *Wood,* 3 Mason, 132. *Tompkins* v. *Saltmarsh,* 14 S. & R. 275. *Bland* v.

Rutgers v. Lucet.

the bill to Greenleaf, in the arbitration with Downing, the undertaking is to be considered as *personal* on his part, and to result in this, that if such credit was allowed, he would be answerable for the amount to the plaintiffs. It can admit of no other construction, unless we suppose the parties considered the defendant as acting also; in relation to this bailment, as the factor or agent of Greenleaf, and that they thereby meant to bind his principal only. This cannot well be *supposed, for it is wholly foreign from the     [*96] nature and scope of such an agency. The engagement was therefore *personal*, on the part of the defendant, and Greenleaf could never be liable on the ground of his agent's agreement respecting the bill, nor on any other ground than actually receiving the money to his use.(*a*) But,

*Wormack*, 2 Murph. 373. *Beardslee* v. *Richardson*, 11 Wend. 25. *Anderson* v. *Foresman*, Wright, 598. The leading case upon this subject is *Coggs* v. *Bernard*, Ld. Raym. 909, where one who had undertaken, without compensation, to carry goods safely and securely, was held responsible for damage that they sustained in their carriage through his neglect. In accordance with the principle of that case, it has been held that an action would lie against a gratuitous agent, who on procuring the renewal of a fire policy, neglected certain formalities, the omission of which rendered the policy inoperative ; *Wilkinson* v. *Coverdale*, 1 Esp. N. P. C. 74 ; see *Setter* v. *Work*, Marshall on Ins. 299 ; or in one who carrying a parcel, lost it by " great negligence ;" *Beauchamp* v. *Powley*, 1 M. & Rob. 38 ; or one who in keeping money, by " gross negligence " on his part, it was stolen ; *Doorman* v. *Jenkins*, 2 Ad. & Ell. 256 ; or one who having received and undertaken to deliver a letter containing money, to pay a note and take up the note, should neglect to carry the letter or take up the note ; Story on Bailments, § 171 *a*, § 171 *b* ; or one who having received and undertaken to collect a note when due, or give notice of dishonor to the indorsers, omits to do either ; *Smedes* v. *Bank of Utica, ut sup. ; Bank of Utica* v. *McKinstry*, 11 Wend. 473 ; *Beardsley* v. *Richardson*, id. 25 ; *Callender* v. *Oelricks*, 1 Arnold R. 401, 402. The mandate having been undertaken, the mandatory must perform it according to the terms of his lawful contract, which may be enlarged or restricted as the parties please. Jones on Bailments, Am. ed. 1836, p. 53, 54 ; Story on Bailment, ed. 1846, § 161, § 164.

(*a*) " In general, when a man is known to be acting and contracting merely as the agent of another, who is also known as the principal, his acts and contracts, if he possesses full authority for the purpose, will be deemed the acts and contracts of the principal only, and will involve no personal respon-

2. Supposing the bailment to the defendant to have been *general,* and that he was subject to no special agreement to

sibility on the part of the agent, unless the other circumstances of the case lead to the conclusion, that he has either expressly or impliedly incurred, or intended to incur, such personal responsibility." Story on Agency, 2d ed. § 261. 3 Chitty on Comm. and Manuf. 211, 212. Paley on Agency, by Lloyd, 368, 369. *Paterson v. Gandesequi,* 15 East, 62. *Ex parte Hartop,* 12 Ves. 352. *Owen v. Gooch,* 2 Esp. R 567. *Mauri v. Heffernan,* 13 Johns. R. 58, 77. Smith on Merc. Law, 78, 79. *Johnson v. Ogilby,* 3 P. Will. 277. 2 Kent, Comm. Lect. 41, p. 629, 630, 3 ed. *Rathbone v. Budlong,* 15 Johns. R. 1. *Meyer v. Barker,* 6 Binn. 234. *Waring v. Cox,* 1 Miller, Louis. R. 198. *Thompson v. Davenport,* 9 B. & Cressw. 78. See also Mr. Smith's able note to this case, in his Leading Cases, vol. 2, p. 222 to 227. *Thomas's Ex'r v. Edwards,* 2 Mees. & Welsb. 215. *Krumbhaar v. Ludeling,* 3 Miller, Louis. R. 642. *La Farge v. Ripley,* 16 Martin, R. 308. *Waring v. Cox,* 1 Miller, Louis. R. 200. *Zacharie v. Nash,* 13 Louis. R. 21. Smith on Merc. Law, p. 140, 3d ed. 1843. *Campbell v. Baker,* 2 Watts, R. 33. Mr. Chancellor Kent, in his learned Commentaries, uses the following language ;—" It is a general rule, standing on strong foundations, and pervading every system of jurisprudence, that, where an agent is duly constituted, and names his principal, and contracts in his name, the principal is responsible, and not the agent." 2 Kent, Comm. Lect. 41, p. 629, 630, 4th ed. Story on Agency, § 154, 155. But it may be generally stated that an agent makes himself personally reponsible to third persons :—

1. Whenever he does any act without authority from his principal ; Story on Agency, § 264, et seq.; Paley on Agency, by Lloyd, 386, 387. *Polhill v. Walter,* 3 B. & Adolph. 114. *Parrot v. Wells,* 2 Vern. R. 127. Bayley on Bills, ch. 2, § 7, 5th ed. 3 Chitty on Comm. and Manuf. 212. 2 Liverm. on Agency, 255, 256, ed. 1818. *Sumner v. Williams,* 8 Mass. R. 178. *Bowen v. Morris,* 2 Taunt. 385, 386. *East India Co. v. Hensley,* 1 Esp. R. 112. Smith on Merc. Law, 79, 80, 2d ed. 2 Kent, Comm. Lect. 41, p. 629 to 632, 4th ed. *Johnson v. Ogilby,* 3 P. Will. 278, 279. *Meech v. Smith,* 7 Wend. 315. *Dusenbury v. Ellis,* 3 Johns. Cas. 70 ; per Lord Holt, in Holt's Rep. 309. See *Woodes v. Dennett,* 9 N. Hamp. R. 55. (Even though under the belief that he possesses such authority ; *Smout v. Ilbery,* 10 Mees. & Welsb. 1, 9, 10.)

2. Where at the time of making the contract, the agency is not revealed ; Story on Agency, § 266, et seq. *Owen v. Gooch,* 2 Esp. R. 567. *Ex parte Hartop,* 12 Ves. 352. *Patterson v. Gandasequi,* 15 East, 62, 68. 3 Chitty on Comm. and Manuf. 211. *Mauri v. Heffernan,* 13 Johns. 58, 77. 2 Liverm. on Agency, 245–247, 257, ed. 1818. 2 Kent, Comm. Lect. 41, p. 630, 631, 4th ed. *Stackpole v. Arnold,* 11 Mass. R. 27. *James v. Bixby,* 11 Mass. R. 34, 37, 38. *Bedford v. Jacobs,* 16 Martin R. 530. *Brockway v. Allen,* 17 Wend. 40, 43. 2 Kent, Comm. Lect. 41, p. 629, 631, 4th ed. *Hyde v. Wolf,* 4 Miller, Louis. R. 234. *Taintor v. Prendergast,* 3 Hill, R. 72. *Corlies v. Widdefield,* 6 Cowen, 181. *Rathbon v. Budlong,* 15 Johns.

return the bill or pay the amount, although acting gratuitously, he was still bound, according to the authorities on this '

R. 1. *Waring* v. *Mason*, 18 Wend. 425. *Mills* v. *Hunt*, 20 Wend. 431. *Raymond* v. *Crown & Eagle Mills*, 2 Metcalf, R. 319. Smith on Merc. Law, p. 134, 135, 140, 141, 3d ed. 1843. *Upton* v. *Gray*, 2 Greenl. R. 373. *Keen* v. *Sprague*, 3 Greenl. R. 77. *Parker* v. *Donaldson*, 2 Watts & Serg. 9 ;—and the name of his principal made known. Story on Agency, § 267. Paley on Agency, by Lloyd, 372, 373. 3 Chitty on Comm. and Manuf. 211. *Paterson* v. *Gandasequi*, 15 East R. 62, 68, 69. *Ex parte Hartop*, 12 Ves. 352. Smith on Merc. Law, 78, 79, 2d ed. Id. ch. 5, § 5, p. 134–136, 140, 141, 3d ed. 1843. *Thomson* v. *Davenport*, 9 B. & Cressw. 78, 88, *Bedford* v. *Jacobs*, 4 Miller, Louis. R. 528. *Beebe* v. *Roberts*, 12 Wend. 413. 2 Kent, Comm. Lect. 41, p. 629–631, 4th ed.

3. Where the principal resides in a foreign country. Story on Agency, § 268. Paley on Agency, by Lloyd, 248, 373, 382. Buller, N. P. 130. *De Gaillon* v. *L'Aigle*, 1 Bos. & Pull. 368. *Paterson* v. *Gandasequi*, 15 East, R. 62. *Thomson* v. *Davenport*, 9 Barn. & Cressw. 78. Smith on Merc. Law, 76, 78, 2d ed. Id. ch. 5, § 5, p. 134–136, 140, 141, 3d ed. 1843, 2 Liverm. on Agency, 249, ed. 1818. *Stackpole* v. *Arnold*, 11 Mass. R. 27. *Bradlee* v. *Boston Glass Manufactory*, 16 Pick. 347, 350. But the presumption that the agent is personally liable in this case may be rebutted by proof of any usage or agreement to the contrary. See *Kirkpatrick* v. *Stainer*, 22 Wend. 244. *Taintor* v. *Prendergast*, 3 Hill, 72, 73.

4. Where the agent makes the contract in his own name or voluntarily incurs a personal responsibility, either express or implied. Story on Agency, § 269. Id. § 147, 154, 156 to 159. 1 Stair, Inst. by Brodie, B. 1, tit. 12, § 16. 3 Chitty on Comm. and Manuf. 211. 2 Kent, Comm. Lect. 41, p. 630, 4th ed. Id. 631. *Jones* v. *Littledale*, 6 Adolph. & Ellis, 486, 490. *Hopkins* v. *Mehaffey*, 11 Serg. & Rawle, 129. *Burrell* v. *Jones*, 3 Barn. & Cressw. 160. *Ireson* v. *Conington*, 1 Barn. & Cressw. 160. *Magee* v. *Atkinson*, 2 Mees. & Welsb. 440. *Seaver* v. *Hawkes*, 5 Moore & Payne, 649. *Kirkpatrick* v. *Stainer*, 22 Wend. 244, 254, 255. *Taintor* v. *Prendergast*, 3 Hill. R. 72. *Simonds* v. *Herd*, 23 Pick. 121. *Higgins* v. *Senior*, 8 Mees. & Welsb. 834, 845. *Mills* v. *Hunt*, 20 Wend. 431. *Newhall* v. *Dunlap*, 2 Shepley, R. 180. *Waring* v. *Mason*, 18 Wend. 425. *Collins* v. *Butts*, 10 Wend. 399.

5. In special cases where the policy of the law demands that an agent who has done or refused to do a particular act, shall be liable. As where one pays money to an agent for the use of his principal and afterwards becomes entitled to recall it, "he may, upon notice to the agent, recall it, provided the agent has not paid it over to his principal, and also provided no change has taken place in the situation of the agent, since the payment to him, before such notice. Paley on Agency, by Lloyd, 388 to 394. 3 Chitty on Comm. and Manuf. 313. 2 Liverm. on Agency, 260, 261, ed. 1818. *Cox* v. *Prentice*, 3 M. & Selw. 344. *Hearsay* v. *Pruyn*, 7 Johns. R. 179. *Mowatt* v.

subject, and the reason of the thing, to use a *due diligence and attention, adequate to the trust imposed in him, to perform his engagement with good faith, and neither do nor omit any thing which the nature of the trust required.* In the present case, the award, by which the bill was allowed

*M'Lellan*, 1 Wend. 173. The mere fact, that the agent has passed such money in account with his principal, or that he has made a rest in his accounts, without any new credit being given to the principal, will not of itself be sufficient to entitle the agent to retain the money, when the party, entitled to recall it, demands it. 3 *Chitty on Comm. and Manuf.* 313. *Paley on Agency,* by Lloyd, 388, 389. 2 *Liverm. on Agency.* 264, ed. 1818. *Buller v. Harrison,* Cowp. R. 565. *Cox v. Prentice,* 3 M. & Selw. 344. But, if a new credit has been given to the principal since the payment, or if bills have been accepted, or if advances have been made, on the footing of it, the payment cannot be recalled. 3 *Chitty on Comm.* and *Manuf.* 313. *Buller v. Harrison,* Cowp. 565. *Paley on Agency,* by Lloyd, 388, 389. 2 *Liverm.* on *Agency,* 264–266, ed. 1818. *Mowatt v. M'Lellan,* 1 Wend. 173. A *fortiori,* if the money has been paid over to the principal before notice of the recall, the agent will not be liable, unless, indeed, the receipt of the money by the agent was obviously fraudulent and illegal, or his authority to receive it was known to himself to be utterly void. 3 *Chitty on Comm.* and *Manuf.* 313. *Cary v. Webster,* 1 Str. 408. *Campbell v. Hall,* Cowp. R. 204. *Edwards v. Hodding,* 5 Taunt. 515. *Snowden v. Davis,* 1 Taunt. R. 359. *Ripley v. Gelston,* 9 Johns. R. 201. Smith on Merc. Law, 80–81, 2d ed. Id. p. 143, 144, 3d ed. 1843. *Buller v. Harrison,* Cowp. R. 565. *Paley on Agency,* by Lloyd, 388–390. *Seidell v. Peckworth,* 10 Serg. & R. 442. *Frye v. Lockwood,* 4 Cowen, 454. Various examples might be put to illustrate this doctrine. Thus, where money has been paid to an agent to avoid an illegal distress, or an illegal claim ; as, to the bailiff of a sheriff, to avoid an illegal distress ; or, where money has been paid to a collector for an illegal duty, and notice of the objection is given to the agent, or collector, before he pays it over ; the party, paying it, may recover it back from the agent, or collector, notwithstanding he has since paid it over to the principal. *Snowden v. Davis,* 1 Taunt. R. 359. *Edwards v. Hodding,* 5 Taunt. R. 815. *Ripley v. Gelston,* 9 Johns. R. 201. *Bank of U. States v. Bank of Washington,* 6 Peters, R. 8, 19. *Tracy v. Swartwout,* 10 Peters, R. 80. *Elliott v. Swartwout,* 10 Peters, R. 137. *Frye v. Lockwood,* 4 Cowen, 454. 2 *Liverm.* on *Agency,* 262–264, ed. 1818. Smith on Merc. Law, 82, 2d ed. Id. Pt. 1, ch. 5, § 7, p. 143–145, 3d ed. 1843. *Bend v. Hoyt,* 13 Peters, R. 263. *Allen v. M'Keen,* 1 Sumner, R. 277, 278, 317. *Miller v. Aris,* 3 Esp. R. 231. S. C. cited Selwyn's Nisi Prius, 93, 8th ed. *Paley on Agency,* by Lloyd, 393, 394. But, if the illegality is unknown to the agent, and no objection of that sort is made before he has paid over the money, he will not be liable therefor.'' This subject is elaborately discussed and the principal cases are reviewed in Judge Story's work on Agency, 2d ed. 310–381, to which the reader is respectfully referred.

to Greenleaf, was made on the 30th of March, 1796, and substantially performed by Downing on the 20th of April following, and this performance made to the defendant himself as the agent of Greenleaf, who then also fulfilled the award on the part of Greenleaf. The defendant, therefore, at that time, knew that the bill was satisfied, and he informed Downing that he would pay the amount to the plaintiffs. If he was not liable to pay it himself, Greenleaf, undoubtedly was, and he ought, at least, to have given notice to the plaintiffs of its allowance to Greenleaf, and of their right to demand it of him. But instead of doing this, he continually kept them ignorant of its real situation, told them it was still in the hands of the arbitrators to be recovered, and amused them by sending for it to enable them to proceed in the suit against Flint. This conduct, considered as an omission of duty merely, was inconsistent with ordinary diligence and fidelity to the interest of the plaintiffs, and to the trust reposed in the defendant, and, in contemplation of law, it was *gross neglect.* If we add to this, his actually receiving the whole of the property awarded to Greenleaf, his paying the whole of the money awarded to Downing, and informing him that he should pay this bill to the plaintiffs, and his afterwards *paying or *advancing* 140 dollars of it on account, the circumstances are sufficient to raise a presumption, that he was possessed of the means, either from Greenleaf, or from the property received in pursuance of the award, to discharge the bill, and that he ought in good faith to have done it.     [*97]

The cause, during the last trial, has probably received all the light which can be thrown upon it, and the present verdict appears to be according to the justice and equity of the case. To permit the cause to be again agitated would answer no good purpose. We think, therefore, that the verdict ought not to be disturbed, and that judgment must be entered for the plaintiffs.

                            Judgment for the plaintiffs.