WILLIAM SIEGEL, Respondent, *v.* SPEAR & COMPANY, Appellant.

**Bailment — where gratuitous bailee of furniture agrees, before receiving same, to procure insurance for owner's benefit and fails to do so it is liable for its loss by fire while in its charge.**

Where plaintiff, who had purchased furniture from defendant and was about to leave the city, arranged with defendant's creditman that the plaintiff should send his furniture by his own truck to the defendant's storehouse where defendant would keep it free of charge, and there is evidence sufficient to sustain a finding that, at the time of making these arrangements, and while the furniture was still in plaintiff's possession, the creditman also promised and agreed to insure the furniture for plaintiff's benefit, the promise was part of the whole transaction and was linked up with the gratuitous bailment. The bailee, if such a contract was within its creditman's agency — and his authority to act is not raised by any sufficient exception — was then under as much of an obligation to procure insurance as he was to take care of the goods, and where no insurance was placed upon the furniture and it was destroyed by fire after delivery at the warehouse the defendant is liable for the loss. (*Thorne* v. *Deas*, 4 Johns. 84, 99, distinguished and questioned.)

*Siegel* v. *Spear & Co.*, 195 App. Div. 845, affirmed.

(Submitted November 22, 1922; decided January 16, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 17, 1921, which affirmed a determination of the Appellate Term affirming a judgment of the City Court of the city of New York in favor of plaintiff entered upon a verdict.

*Alfred A. Walter* and *Edwin R. Wolff* for appellant. There was no consideration for the defendant's alleged promise to effect insurance. (*Thorne* v. *Deas*, 4 Johns. 84; *Glanzer* v. *Shepard*, 233 N. Y. 236; *Nellis* v. *DeForest*, 16 Barb. 61; *Ainsworth* v. *Bachus*, 4 Hun, 414; *Condon*

v. *Exton-Hall Brokerage V. Agency*, 80 Misc. Rep. 369; *Rose* v. *U. S. Tel. Co.*, 3 Abb. Pr. [N. S.] 408; 34 How. Pr. 308; 6 Robt. 305; *Boniface* v. *Relyea*, 5 Abb. Pr. [N. S.] 259; 36 How. Pr. 457, 465; 6 Robt. 397; *Doupe* v. *Gennin*, 37 How. Pr. 5; 1 Sweeney, 25; *Harrigan* v. *Cahill*, 100 Misc. Rep. 48; 164 N. Y. Supp. 1005; *Stone* v. *Demarest*, 95 Misc. Rep. 543; 159 N. Y. Supp. 800; *Miller* v. *Inter. Harvester Co.*, 193 App. Div. 258; 184 N. Y. Supp. 91.) There was no valid contract to secure the issuance of a policy of insurance. (May on Ins. [4th ed.] § 43; *Bradley* v. *Standard L. & Acc. Ins. Co.*, 112 App. Div. 536; *Baptist Church* v. *Brooklyn Fire Ins. Co.*, 28 N. Y. 153.)

*Lawrence B. Cohen* and *Gilbert M. Levy* for respondent. The plaintiff's abandonment of his purpose to insure, in reliance on the defendant's promise, was a sufficient consideration for the defendant's promise. (*Trustees* v. *Smith*, 118 N. Y. 634; *Draper* v. *O. C. Fire Relief Assn.*, 190 N. Y. 16; *Witherell* v. *Kelly*, 195 App. Div. 227.)

CRANE, J. The plaintiff commenced this action in the City Court of the city of New York to recover his loss sustained by failure of the defendant to insure his household furniture stored in its storehouse. The action is based upon an alleged agreement to insure made with the defendant's creditman. So far the plaintiff has been successful, the Appellate Division, however, certifying that in its opinion there is a question of law involved which should be reviewed by this court.

In August of 1917 and January of 1918 the plaintiff purchased of the defendant certain household furniture for the sum of $909.25 and took it to his apartment in New York city. He gave back to the defendant two chattel mortgages, which provided for monthly payments of the purchase price, and also that the furniture should not be removed from the plaintiff's residence without the written consent of the mortgagee.

By May of 1918 the plaintiff had paid in all $295. In that month, desiring to move from the city for the summer months and give up his apartment, the plaintiff went to the defendant's place of business in New York city to see about storing his furniture until his return. It was arranged with the defendant's creditman, McGrath, that the plaintiff should send his furniture by his own truck to the defendant's storehouse and that the defendant would keep it for him free of charge. It is claimed that McGrath at the time of making these arrangements also promised and agreed to insure the furniture for the plaintiff's benefit. The furniture had not been insured by the plaintiff at any time. The conversation is given by Mr. Siegel as follows: " At that time he said, ' You had better transfer your insurance policy over to our warehouse.' I said ' I haven't any insurance. I never thought of taking it out, as I never had time to take it out.' But I said: ' Before the furniture comes down I will have my insurance man, who insures my life, have the furniture insured and transferred over to your place.' He said, ' That won't be necessary to get that from him; I will do it for you; it will be a good deal cheaper; I handle lots of insurance; when you get the next bill — you can send a check for that with the next installment.' "

The furniture was sent to the defendant's storehouse about the 15th of May and about the 15th of the following June was destroyed by fire. No insurance had been placed upon it.

Upon these facts the plaintiff has recovered the amount of his loss. The defendant raises at least two objections to this result. It claims *first*, that there was no consideration for the alleged agreement made with McGrath to insure the furniture and, *second*, that McGrath had no authority to make any such contract even if he did.

We are inclined to think that if the contract were made — and we must assume it was as there is evi-

31

dence to sustain the findings of the jury to this effect — there was in the nature of the case a consideration sufficient to sustain the promise. It is, of course, a fact that the defendant undertook to store the plaintiff's property without any compensation. The fact that it had a chattel mortgage upon the property did not affect its relationship as a bailee without pay. Under these circumstances it was not liable for the destruction of the goods by fire unless due to its gross neglect. (Van Zile on Bailments & Carriers, § 93; *First Nat. Bank of Lyons* .v. *Ocean Nat. Bank,* 60 N. Y. 278.) There is no such element in this case.

But if in connection with taking the goods McGrath also voluntarily undertook to procure insurance for the plaintiff's benefit, the promise was part of the whole transaction and was linked up with the gratuitous bailment. The bailee, if such a contract were within McGrath's agency, was then under as much of an obligation to procure insurance as he was to take care of the goods.

When McGrath stated that he would insure the furniture it was still in the plaintiff's possession. It was after his statements and promises that the plaintiff sent the furniture to the storehouse. The defendant or McGrath entered upon the execution of the trust. It is in this particular that this case differs from *Thorne* v. *Deas* (4 Johns. 84, 99) so much relied upon by the defendant. In that case A and B were joint owners of a vessel. A voluntarily undertook to get the vessel insured but neglected to do so. The vessel having been lost at sea it was held that no action would lie against A for the non-performance of his promise, although B had relied upon that promise to his loss. It was said that there was no consideration for the promise. In that case there was the mere naked promise of A that he would insure the vessel. B parted with nothing to A. He gave up possession of none of his property to A, nor of any

interest in his vessel. The case would have been decided differently, no doubt, if he had. As Chancellor KENT said in referring to the earlier cases: " There was no dispute or doubt, but that an action upon the case lay for a misfeasance, in the breach of a trust undertaken voluntarily."

The same may be said regarding the case of *Brawn* v. *Lyford* (103 Me. 362).

In the case of *Rutgers* v. *Lucet* (2 Johns. Cas. 92, 95) the law on this point was stated to be as follows: " A mere agreement to undertake a trust, *in futuro,* without compensation, it is true, is not obligatory; but when once *undertaken,* and the trust actually *entered upon,* the bailee is bound to perform it, according to the terms of his agreement. The confidence placed in him, and his undertaking to execute the trust, raise a sufficient consideration; a contrary doctrine would tend to injure and deceive his employer, who might be unwilling to consent to the bailment on any other terms."

In *Hammond* v. *Hussey* (51 N. H. 40, 50) the court, quoting Professor Parsons, says: " If a person makes a gratuitous promise, and then enters upon the performance of it, he is held to a full execution of all he has undertaken."

Where one had gratuitously undertaken to carry the money of a bailor to a certain place and deliver it to another and after receiving the money the bailee gave it to a neighbor who undertook to make delivery and lost it, it was held that the bailee had violated his trust in handling the money, that he was guilty of gross negligence in not fulfilling the terms of the bailment. (*Colyar* v. *Taylor,* 41 Tenn. 372; Van Zile on Bailments & Carriers, § 98; *Davis* v. *Gay,* 141 Mass. 531, 534; *Isham* v. *Post,* 141 N. Y. 100, 106; *Glanzer* v. *Shepard,* 233 N. Y. 236; 6 Ruling Case Law, p. 656, § 67.)

From this aspect of the case we think there was a consideration for the agreement to insure. This renders

it unnecessary to determine whether the plaintiff in refraining from insuring through his own agent at the suggestion of McGrath surrendered any right which would furnish a consideration for McGrath's promise.

I find that *Thorne* v. *Deas* (*supra*) has been seldom cited upon this question of consideration and whether or not we would feel bound to follow it to-day must be left open until the question comes properly before us.

As to McGrath's authority to act in this matter, we do not find the point raised by any sufficient exception.

For the reasons here stated, the judgment must be affirmed, with costs.

Hiscock, Ch. J., Hogan, Cardozo, Pound, McLaughlin and Andrews, JJ., concur.

Judgment affirmed.