## M. J. TASHJIAN & CO. v. RAILWAY EXPRESS AGENCY, Inc., et al.

District Court, S. D. New York.
Jan. 18, 1940.

Battle, Levy, Fowler & Neaman, of New York City (George Gordon Battle and Edgar Allyn Buttle, both of New York City, of counsel), for plaintiff.

Breed, Abbott & Morgan, of New York City (Sumner Ford, Thornton C. Land, and Malcolm D. Watson, all of New York City, of counsel), for defendant George A. Cluett.

GALSTON, District Judge.

Four causes of action are set forth in which the plaintiff seeks to recover for

1. Negligence by the defendants resulting in the loss of certain rugs of the plaintiff;

2. Negligence of the defendant Cluett in failing to insure the rugs to be delivered to the plaintiff pursuant to the alleged demand and request of the plaintiff;

3. Conversion of the rugs by the defendants; and

4. The purchase price of a rug described as a silk Kashan valued at $1,750.

The railway company admitted that on October 24, 1936, it received as a carrier at Williamstown, Mass., one bale said to contain rugs valued at $50 from the defendant George A. Cluett, and though denying the allegations respecting negligence and conversion, at the trial consented to the entry of judgment against it in the sum of $50.

The defendant Cluett denies negligence or conversion and likewise denies that he purchased the Kashan rug which forms the subject matter of the fourth cause of action.

The plaintiff is a dealer in rugs, having a shop located at 958 Madison Avenue, New York City. On October 20, 1936, the defendant Cluett entered the shop and inquired of Tashjian, president of the plaintiff corporation, whether the plaintiff had a rug 6 by 4, and also rugs 10 by 14. Rugs were shown him, some of which he liked. The defendant explained he had a place in Williamstown, Mass., and wanted, so testified Tashjian, the plaintiff "to send those rugs on approval * * * and if he likes them he will keep them and if he doesn't, he will send them back to us." The plaintiff agreed to ship the rugs and the defendant was told that the rugs would be sent via the American Railway Express.

On October 21, 1936, these rugs in two bales were shipped to the defendant to Williamstown, under a declared valuation by the plaintiff of $7,000.

Tashjian, again following his version of the transaction, having agreed to go to Williamstown to aid in arranging the rugs in the various rooms of the Cluett home, arrived there on October 23. He exhibited the rugs to Cluett and Cluett expressed his willingness to purchase the silk Kashan rug for $1,750. if the wrinkles could be taken out and the rug put in shape. He also selected a Saruck Kashan rug and agreed to pay $85 for it. The other rugs he didn't care to have. Tashjian thereupon requested permission to send additional rugs for inspection.

During the course of the first visit on October 23, again according to Tashjian's testimony, Cluett inquired why the rugs had been insured for $7,000 and Tashjian replied that was the only safe way in which to deliver rugs and was in accordance with his practice. When Cluett pointed out to him that other firms did not follow that method Tashjian replied that such firms must have floating policies of insurance which he did not carry.

Before Tashjian left, so he said, Cluett expressed a desire to have two other rugs left at his home for further inspection. Thus six rugs were to be returned to the plaintiff. Tashjian contends that he instructed Cluett to send them back just as they had come, "insured, because that was the most safest way I could get my rugs back".

The plaintiff left Williamstown on the afternoon of October 23rd, returning to New York.

On October 28th Tashjian returned to the Cluett home with a second lot of rugs and from the second lot the defendant purchased two.

Cluett told him that he had shipped the six rugs on October 23rd by the American Railway Express and exhibited the receipt, whereupon Tashjian said: "Why didn't you insure it?" to which Cluett replied, as Tashjian said: "It wasn't necessary"— as he had sent much merchandise without insurance and it had always been delivered.

The shipment was not received by Tashjian and the present suit as a consequence resulted.

Now there is presented a sharp contradiction in fact both as to what took place in Tashjian's place of business in New York as well as in the Cluett home in Massachusetts. Cluett testified that at the shop he agreed to buy a small Boukhara rug for $100, and said it was to be sent to him at Williamstown. Pressed as to whether he would like to look at other rugs he said "No", that he had nothing else in mind. Nevertheless he did look at what was described by Tashjian as "the finest rug in the world" and in doing so was led to the rear of the store. After that there followed some talk about other rugs. In this talk Tashjian explained that he was very short of money; that he had some payments to make and a contract to take rugs from abroad, and that if he, Cluett, wanted to buy anything he could sell rugs at a very low price. Cluett said he wasn't interested in buying anything else and Tashjian replied: "You live in Williamstown. I go all over the country with my rugs. Can't I go to Williamstown and show you some rugs there?" to which Cluett replied that he was willing to have Tashjian come but that he didn't think that Tashjian would sell him any rugs.

The conversation concluded with a request by Tashjian—"Wont you let me come up and bring some rugs up?" to which Cluett replied: "Yes, if you want to come." Cluett did not designate any rugs that were to be delivered to him other than the Boukhara rug which he had purchased. He denied that he was handed any receipt or shipping document to sign, nor was there discussion about a consignment shipment.

Cluett then left for his home in Williamstown and shortly after arrival he was informed by his housekeeper that an express shipment of two bales had arrived with charges of transportation to be collected. According to Cluett there had been no understanding at Tashjian's place that any rugs were to be forwarded that way. Nevertheless he did pay the express company's charges. The following day Tashjian arrived and Cluett told him that he had received rugs and had paid transportation charges. Tashjian replied: "But that is a mistake. That is that girl. I will pay you for that."

Then, according to Cluett, Tashjian showed the various rugs, trying them out in the different rooms. Among the rugs displayed was the Kashan rug which Cluett agreed to purchase at a price of $1,750, providing Tashjian would remove the wrinkles and put the rug in proper shape. Cluett also agreed to take an $85 rug, but no other, and two additional rugs were left for further inspection. Tashjian, so testified Cluett, then got ready to leave and because of pressure of train time requested that someone do the rugs up for him and ship them to New York. Cluett agreed to have that done, but said: " 'I think we might as well understand how they are to go back.' I said: 'You remember what happened when they came. We can ship those any way you want, but I want to know now how they are to go.' He said: 'I am insured.' He said: 'You send them collect, no value.' Then I said to him: 'The housekeeper attends to all those things', and she stood right there and I said to tell her, and he repeated practically every word for word that he told me."

The rug for $100 which Cluett had purchased in New York, Tashjian took back on his own initiative, saying that it was not good enough for the place in which Cluett expected to place it.

During Tashjian's second visit to Williamstown, which occurred October 28th, 1936, Cluett purchased some additional rugs and gave Tashjian a check for $1,185. Some time later Cluett called at the Tashjian shop in New York and asked for a receipt for the money thus paid and Tashjian said: "I will have it made up and we can send it to you," and added: "I find I am not insured on those rugs that were shipped with the exception of the one rug that you were going to take. If you will sign a paper saying that you were the owner of that rug I can get the insurance on it;" to which he answered: "Mr. Tashjian, I told you I did not own the rug and you know I did not own it, and I am not going to sign a paper saying that I own something when I do not own it." The rug referred to was the $1,750 rug and it appears that when Cluett gave him the check for $1,185, Tashjian asked him to advance money also on the $1,750 rug, to which Cluett replied: "No, I will not pay for that until it comes back here and I am satisfied with it."

Mary Hanft, the Cluett housekeeper, in all essential respects corroborated Cluett's testimony as to the conversation with Tashjian relating to the collect shipment from New York and the return shipment from Williamstown.

Thus it appears that there are sharp issues of fact which are determinative of the action. On the whole I am inclined to believe that no consignment bill was presented to the defendant while he was in the plaintiff's store. The terms of the consignment receipt which Margaret McBride, Tashjian's secretary, said was presented to defendant Cluett are hardly the terms of a receipt which would be tendered to a private customer. So too, the probabilities lead to the conclusion that Tashjian had stated at the Cluett home that the shipment from New York with charges to be collected had been in error. Surely there was no agreement between the parties in the Tashjian shop that Cluett was to pay express charges and insurance.

As to the value of the rugs the testimony is far from satisfactory. Miss McBride testified that on the inventory cards she filled in on each card the selling prices on or about October 21, 1936, of those rugs which had been shipped to Cluett; but not until later did she add the names of the persons from whom these rugs had been purchased, and the date of purchase as well as the terms under which they had been acquired by the plaintiff. Miss Mc-

Bride did not remember how long after October 21, 1936, those notations were added to the cards—it might have been à month or two later. "I know it was when Mr. Tashjian—I do not remember just which lawyer he took it to first—but they requested that he furnish the information as to where he purchased the rugs and what year he purchased it." No original sources,—neither invoices nor books of original entry—were produced.

As bearing on the matter of credibility, Tashjian's testimony in respect to value is also severely challenged by his admissions concerning the sale of his business not long before the transaction with the defendant. All of his assets, including 220 or 240 rugs, were sold on execution of judgment for $3,200. Thereafter, on satisfaction of the judgment, the plaintiff again obtained possession of the rugs.

■ Accordingly, on the balance of probabilities I am the more inclined to take the defendant's version of the transaction. At least since the burden is upon the plaintiff to establish by fair preponderance of the evidence its cause of action I believe there has been failure so to do.

■ Clearly, in respect to the third cause of action, there was no conversion by the defendant, for the proof shows that he made delivery of the rugs to the Railway Express Agency. It is equally clear that the fourth cause of action must fail because on Tashjian's own testimony there was only an agreement to purchase the silk Kashan rug valued at $1,750, providing certain conditions were complied with by the seller. The loss of the rug, of course, prevented the seller from fulfilling the conditions. Consequently, there never was a sale.

■ That leaves for consideration only the first and second causes of action, those sounding in negligence. The legal relationship between the parties in respect to the six rugs which were shipped from the Cluett home in Williamstown to the plaintiff's shop in New York is somewhat difficult to define. However, at most Cluett was a gratuitous bailee. The rugs on October 23, 1936, were in Cluett's possession

because Tashjian had requested permission to send them to him.

■■ While in his home, it was not his duty to insure them from fire or burglary; and no liability would have attached except from gross negligence. Nor in the circumstances of the case was it the duty of Cluett to return the goods to the bailor. That duty rested on Tashjian. Indeed, the evidence discloses that he recognized that obligation, for because of his desire to catch a train he requested Cluett to pack and ship the rugs. When Cluett agreed to accommodate him, what legal liability, if any, did he thereby incur?

■ First, perhaps, a question of fact will have to be determined, for, as has appeared, Cluett and Mary Hanft on the one hand say that there was no request by Tashjian to have the goods insured, and he, on the other, says that he requested that they be insured. On the whole I am inclined to, and do accept the former version of the conversation. Accordingly, I find there was no special contract to insure and in the absence of such special contract the bailee was under no obligation to insure. 3 Ruling Case Law, 107; Siegel v. Spear & Co., 234 N.Y. 479, 138 N.E. 414, 26 A. L.R. 1205; Sagendorph v. First National Bank of Philmont, 218 App.Div. 285, 218 N.Y.S. 191. Moreover, Tashjian having said, as I find, that the rugs were to be shipped to him "collect—no value" cannot be heard now to complain, for there is no question that Cluett delivered the rugs to the American Railway Express. It could have made no difference to Cluett what charges were to be collected in New York from Tashjian. Cluett did not have to advance to the carrier either the express charges or the insurance fee. He had no interest in doing anything save to comply with Tashjian's request. It is true that he had expressed his willingness to purchase one of the rugs included in the six returned, providing it could be put in a satisfactory condition by Tashjian; but that was his sole interest in the rugs which were returned. He was called upon to exercise ordinary care and he met that obligation by having the rugs delivered to the carrier.

Accordingly, judgment will be rendered for the defendant.