ALBANY,
February, 1809.

Thorne
v.
Deas.

D. Thorne and W. Thorne *against* Deas.

Where A. and B. were joint owners of a vessel, and A. voluntarily undertook to get the vessel insured, but neglected to do so, and the vessel was lost, it was held, that no action would lie against A. for the non-performance of his promise, though B. sustained a damage by the *non-feasance,* there being no consideration for the promise; but a factor or commercial agent, who is entitled to a commission, will be answerable for not executing an order to insure.

THIS was an action on the case, for a *non-feasance,* in not causing insurance to be made on a certain vessel, called the *Sea-Nymph,* on a voyage from *New-York* to *Camden,* in *North-Carolina.*

The plaintiffs were copartners in trade, and joint owners of one moiety of a brig called the *Sea-Nymph,* and the defendant was sole owner of the other moiety of the same vessel. The brig sailed in ballast, the 1st *December,* 1804, on a voyage to *Camden,* in *North-Carolina,* with *William Thorne,* one of the plaintiffs, on board, and was to proceed from that place to *Europe* or the *West-Indies.* The plaintiffs and defendant were interested in the voyage, in proportion to their respective interests in the vessel. On the day the vessel sailed, a conversation took place between *William Thorne,* one of the plaintiffs, and the defendant, relative to the insurance of the vessel, in which *W. Thorne* requested the defendant that insurance might be made; to which the defendant replied, "that he (*Thorne*) might make himself perfectly easy on the subject, for that the same should be done." About ten days after the departure of the vessel on her voyage, the defendant said to *Daniel Thorne,* one of the plaintiffs, "well, we have saved the insurance on the brig." *D. Thorne* asked, "how so? or whether the defendant had heard of her arrival?" To which the defendant answered, "No; but that, from the winds, he presumed that she had arrived, and that he had not yet effected any insurance." On this *D. Thorne* expressed his surprise, and observed, "that he supposed that the insurance had been effected immediately, by the defendant, according to his promise, otherwise, he would have had it done himself; and that, if the defendant would not have the insurance immediately made, he would have it effected." The defendant replied, that "he (*D. Thorne*) might make himself easy, for he

would that day apply to the insurance offices, and have it done."

ALBANY,
February, 1809.

Thorne
v.
Deas.

The vessel was wrecked on the 21st *December*, on the coast of *North-Carolina.* No insurance had been effected. No abandonment was made to the defendant by the plaintiffs.

The defendant moved for a nonsuit, on the ground that the promise was without consideration and void; and that, if the promise was binding, the plaintiffs could not recover, without a previous abandonment to the defendant. These points were reserved by the judge.

A verdict was taken for the plaintiffs, for one half of the cost of the vessel, with interest, subject to the opinion of the court on the points reserved.

*J. Radcliff,* for the plaintiffs.

1. That the plaintiffs and defendant were joint owners of the ship, cannot affect the plaintiffs' right of action. The parties are not partners; nor is it a joint-tenancy. One part-owner may be answerable to another on a special undertaking.[*]

2. Wherever a person undertakes to act as an agent for another, though not a broker or agent by profession, he will be entitled to a reasonable compensation for the service he may perform; and this will be a sufficient consideration to support the promise or undertaking. But in an action on the case, in the nature of a *tort,* for a *non-feasance,* or a misfeasance, it is not requisite to show any consideration. The action is for the damages sustained in consequence of the *non-feasance,* and not on the ground of the *assumpsit.* If the undertaking be *gratuitous,* and a special damage is caused by the failure of the party to perform the undertaking, an action will lie. The doctrine on this subject is well expressed by Sir *William Jones,* in his excellent essay on the law of bailments.[†] After citing and commenting on several ancient cases on this subject, he adds: " It was not alleged, in either of the cases cited, that the defendant was to receive pay for the feasance of his work; but, since *sur le cas,* pl. 20, and pl. 11. 19 *Hen.* VI. 49. *Bro. Abr. Ac. sur le cas,* 72. 1 *Roll. Abr.* 10.

[*] 2 *Caines,* 293.
2*Term Rep.*483.
1 *East,* 20.

[†] *Jones's Law of Bailments,* 2d edit. 52—60.
*Year-b.* 11 *Hen.* IV. 33. 3 *Hen.* VI. 36. *b.* 37. *a. Stath. Abr. Ac.*

both defendants were described as *actually in trade*, it was not, perhaps, intended, that they were to work for *nothing*. I cannot, however, persuade myself, that there would have been any difference, had the promises been purely *gratuitous*, and had a special injury been caused by the breach of them." And he, then, puts a case, by way of illustration. " Suppose," says he, " that *Robert's* cornfields are surrounded by a ditch or trench, in which the water from a certain spring used to have a free course, but which has, of late, been obstructed by soil and rubbish; and that *Robert*, informing his neighbour *Henry* of his intention speedily to clear the ditch, *Henry* offers and undertakes immediately to remove the obstruction and repair the banks, without reward, he having business of the same kind to perform on his own grounds : if, in this case, *Henry* neglect to do the work undertaken, ' and the water, not having its natural course, overflow the fields of *Robert*, and spoil his corn,' may not *Robert* maintain his action on the case ? Most assuredly," he answers : " And so in a thousand instances of proper bailments that might be supposed, where a just reliance on the promise of the defendant prevented the plaintiff from employing another person, and was consequently the cause of the loss which he sustained; for it is, as it ought to be, a general rule, that for every *damnum injuriâ datum*, an action of some sort, which it is the province of the pleader to advise, may be maintained; and although the *gratuitous* performance of an act be a benefit conferred, yet, according to the just maxim of PAULUS, *Adjuvari nos, non decipi, beneficio oportet ;** but the *special* damage, not the assumption, is the cause of *this* action." The present case is perfectly analogous to the one put by Sir *William Jones*, and it is not easy to add to the clearness and force of his observations in support of the action. The doctrine, too, was laid down in *Coggs* v. *Barnard*,† that a person would be responsible for his negligence in performing a *gratuitous* promise.

In *Delaney* v. *Stoddard*,‡ which was an action for negligence, in not procuring insurance to be made, agreeably to

* *D. 13. 6. 17. 3.*

† 2 Ld. *Raym.* 909.

‡ 1 *Term Rep.* 22.

the request of the plaintiff, the defendant was held liable, on his mere undertaking, without any consideration. It did not appear that the defendant was the general agent of the plaintiff, nor that he had been in the practice of procuring insurances to be made for the plaintiff.*

ALBANY,
February, 1809.

Thorne
v.
Deas.

* 1 *Marshall*, 205. 207.
† 2 *Term Rep.* 187.

In *Smith* v. *Lascelles*,† it was laid down, that where a merchant abroad has effects in the hands of his correspondent in *England*, he has a right to expect that his correspondent will obey an order to insure; or if the merchant abroad has no effects in the hands of his correspondent, yet, if the course of dealing between them be such, as one has been used to send orders for insurance, and the other to comply with them, the former has a right to expect that his orders for insurance will be obeyed, unless notice to the contrary has been given; so the acceptance of a bill of lading, accompanied with an order to insure, will oblige the correspondent to execute the order.

In *Wallace* v. *Tellfair*,‡ where the merchant limited the broker to too small a sum, in consequence of which the insurance could not be obtained, the merchant was held answerable for the loss. These cases are much stronger than the one before the court, for there is no consideration mentioned, nor any express undertaking. They proceed on the general principle stated by Sir *William Jones*, and which is founded in convenience, as well as good faith, so essential in commercial transactions, and in the intercourse of society.

3. No abandonment is necessary in these cases, for negligence in the execution of an order to insure. Abandonment takes place only between the insured and insurer, on a policy of insurance. Even if the doctrine of abandonment was applicable, yet, as there was a physical total loss in this case, no abandonment was requisite; and the plaintiffs must recover, according to the circumstances, and for the actual damages he has sustained.

* *Casey & Lawrence v. Brush,* 2 Caines, 293. *Watson, on Partnership,* 54, 55. 409.

† 1 *H. Bl.* 158.

‡ 2 *Black. Com.* 445. 1 *Comyn on Contracts,* 8, 9, 10.

§ 1 *Esp. Cas.* 75.

*T. A. Emmet* and *Baldwin,* contra. 1. The parties were joint owners of the vessel, and jointly interested in the voyage. They are to be considered as partners in this transaction. One part owner, cannot maintain an action at law against another part owner for advances beyond his share.* A mere verbal promise by one partner to another, to do a thing in relation to their joint concerns, cannot furnish a ground of action for the non-performance. If such an action could be maintained, then one partner might sue his co-partner for every neglect, in the course of their co-partnership transactions. Again, the plaintiffs and defendant being joint owners of the property, the defendant can never be liable, when he has taken the same care of the plaintiffs' property as of his own. If he does the same for another as for himself, he is not answerable even for a case of misfeasance.† By neglecting to get insurance effected, the defendant is as much a loser as the plaintiffs. The promise was to insure the whole, and as the defendant was owner of half, he had a right to change his mind, and forbear to insure. Suppose the parties had given orders to a broker to have the insurance effected, and the defendant had countermanded the order, would not the broker have been justified in not executing the order?

2. But there was no *consideration* for the promise of the defendant. A contract or promise, without a consideration, is a *nudum pactum,* and void.‡ The question is, whether an action will lie for the non-performance of a *gratuitous* promise, though damage arise from the *non-feasance?* It is true, that where a person voluntarily undertakes to do a thing for another, and does it *negligently* or unskilfully, he shall be answerable for the damages arising from his *misfeasance.* The inception of the performance, is essential to support an action for a *misfeasance* or *tort.*

In *Wilkinson* v. *Coverdale,*§ which was an action on a voluntary undertaking to get a policy done for another, and he did it so negligently that the policy was of no benefit to the person, this distinction between a non-feasance and a

ALBANY,
February, 1809.

Thorne
v.
Deas.

misfeasance was taken by *Erskine*, and adopted by Lord *Kenyon.*

In *Elsee* v. *Gatward*,* which was an action against a carpenter, retained to repair a house, for the non-performance of his undertaking, in consequence of which the plaintiff's house was damaged, it was held, that no action would lie for the *nonfeasance*, without showing a consideration. Lord *Kenyon* says, " no consideration results from the defendant's situation as a carpenter, nor from the undertaking ; nor is he bound to perform all the work that is tendered to him ; and therefore the amount of it is this, that the defendant has merely told a falsehood, and has not performed his promise ; but for this non-performance of it, no action can be supported." This, he said, was warranted by the opinion of Lord *Holt*, in the case of *Coggs* v. *Bernard*,† and he adds, " the justice of the case will not be altered by the form of the action ; for if *assumpsit* will not lie in such a case, there is no technical reasoning that will support such an action, as for a *tort*." The distinction between a *nonfeasance* and a *misfeasance* is very ancient, and it is very clearly taken by *Gould*, J. and *Powell*, J. in the case of *Coggs* v. *Bernard*.‡

*\* Term Rep. 143.*

*†2 Ld. Ray. 909.*

*‡2 Ld. Ray. 909 —919.*

In the case of *Elsee* v. *Gatward*, the old cases from 11 *Hen.* IV. 33. to that time were examined, and the result of the investigation was, that in the opinion of the court of *K. B.* no action would lie for the non-performance of a *gratuitous* promise. On this decision of the precise point, now before the court, we might safely rely, but the authority of *Sir William Jones*, has been confidently urged against the defendant ; it therefore, becomes necessary to examine the foundation of his opinion. Though justly respectable for his great genius and learning, that opinion, we trust, will, on examination, be found erroneous. His " Essay" was published before the decision in *Elsee* v. *Gatward*, and no notice of his doctrine is taken by the court, in that case. He must be considered as reasoning speculatively, and from the doctrine of the civil law,

ALBANY,
February, 1809.

Thorne
v.
Deas.

against what he considered as the *dicta* of respectable judges in the *English* courts, in the early stages of their jurisprudence. *Sir William Jones* admits the distinction between a *nonfeasance*, and a *misfeasance*, and that no action will lie for the *non-feasance* of a gratuitous promise, unless *special damages* have been caused by the non-performance.

To understand fully the observations of the judges in the several cases cited by *Sir William Jones*, from the year books, it is necessary to attend to the history of the action of *assumpsit*, which is said to have been first introduced into the law, in the reign of *Henry* IV.* At that time, the only remedies for a breach of contract were by an action of *covenant* or *debt*, and it was a settled rule, that an action of *covenant* could be grounded only on a *specialty ;* and debt would only lie for a *sum certain*, stipulated to be paid, or on a specialty ; so that for the non-performance of a parol promise, the party was compelled to apply to a court of equity, which could not award any *damages* for the non-performance of an agreement.

*3 Reeves' Hist. of Eng. Law, 244—246. 394—396. See also, 2 Comyn on Contracts, 549—554.

The first case is that in 2 *Hen.* IV. 3 *b.* where one *Watton* brought an action against *Brinth*, for that having assumed to build a house for the plaintiff, by a certain day, he had not done it, to the damage of the plaintiff, &c. It was objected that this being on a covenant, and no writing shown, the action would not lie. The objection was supported by *Bryan*, *J.* who, however, conceded, that if the plaintiff had alleged that the work had been begun, and that the defendant had afterwards neglected to finish it, the action might be maintained. A similar case arose in 11 *Hen.* IV. 33. and which was decided in the same manner. *Brooke†* observes on these cases, that no consideration was alleged, and that, therefore, an action would not lie.

* Tit. *Act. sur* case, 40.

The next case was that of 3 *Hen.* VI. 36 *b.* 37 *a.* which is the one particularly commented on by *Sir William Jones*.(a)

(a) A translation of the case in 3 *Hen.* VI. 36. *b.* 37 *a.* may gratify curiosity, and serve to illustrate the argument in this cause. A writ of trespass was

In remarking on the opinion of *Martin*, one of the judges, who objected to the action, that no *tort* was alleged, he seems to consider a special injury as equivalent to a *tort;* but a special injury does not constitute a *tort*, by which *Martin* clearly meant a *misfeasance*, thereby recurring to the

brought by one W. B. against *Watkins*, of *London*, a mill-wright. *Strange* counted on this case, to wit, that on such a day and year, in *London*, in such a ward, he undertook to make a mill for the plaintiff, and that the mill should be ready and raised, between that day and Christmas, in which time the mill was not raised, to the wrong and damage of the plaintiff, ten mares. *Rolf* (for the defendant) prayed judgment of the writ; for by the writ it is stated that the defendant should make a mill, and the plaintiff has not declared in certain how much he ought to have for doing it. Wherefore, &c.

*Strange.* Notwithstanding what has been said, we demand judgment, and pray our damages.

BABINGTON, Ch. J. If I bring a writ of deceit against one for this; that the defendant was my attorney, and that, by his negligence and default, I should lose my land, &c.—in this case it is fit that I should declare how he was retained by me, and took his wages, or, otherwise, the writ is abated, *sic hoc*, &c.

MARTIN, J. I have never seen it for law, that such a writ lies on such a matter shown as it is here stated. No *tort* has been done; it is stated only that he promised to do such a thing, which thing is not done; in which case a good writ of *covenant* would lie, if he had had a *specialty;* but if he had made a mill which had not been good, or had entirely spoiled or badly made it, then a good writ of trespass lies; as suppose that a smith make a covenant with me to shoe my horse, and, by his negligence, pricks my horse, on this matter shown, a good writ of trespass lies; for notwithstanding, on rehearsing the matter, an agreement is stated, I say, that in this case, that he has badly done the thing for which the agreement was made, and for this the agreement is changed into a *tort*, for which a good writ of trespass lies; but in the case at bar it is not so, for there no *tort* is stated in the writ, by the doing of the thing, only the nonfeasance of a thing, which sounds only in covenant. Wherefore, &c.

BABINGTON. It seems to me the contrary. Suppose that one makes an agreement with me to cover my house, within a certain time, within which time he does not cover it, so that, for want of the covering, the roof of the house is rotted by the rain; in this case, I say, that I shall have a good writ of trespass, on the matter shown against him that made the agreement with me, in which case I shall receive damages, as far as I am damaged by the nonfeasance. Wherefore, &c.

COKAIN, J. to the same point. And as to the first point moved, (that he should have declared that he made the agreement with him for a certain sum,)

ALBANY,
Febr*.*ry  809.

Thorne
v.
Deas.

former and settled doctrine, as to a *misfeasance* or *negligence*, as distinguished from a *nonfeasance;* and the difficulty *Sir William Jones* finds in the opinion of *Martin, J.* arises wholly from his not sufficiently attending to the distinction

it seems to me that he has already said so, for it shall not be intended he was to make the mill for nothing, and so from his plea it is concluded, as much as if he had expressly averred it in pleading. And as to the other point, on the matter shown, the writ lies sufficiently well. As suppose that one had made an agreement to repair certain ditches that are on my land, and he does not do it, so by his default, the water which ought to run in the ditch, overflows my land and destroys my corn, I shall have a good writ of trespass for this nonfeasance; so here.

*Rolf.* As to your first point, it seems to me, that it should be expressly mentioned in the writ, that he was bound to give the water free course; (*q'il duist av cau;*) and I say there is a great difference where one allows another to do a thing, and where he is a common labourer; for what a common labourer should have, is put in certainty by the statute, in which case though nothing be mentioned in the agreement as to what he should have, the servant will have a good action of debt against him for his wages, according to the statute; but if I make an agreement with one to go with me, or to do a certain thing, and I do not put it in certainty what he is to have for doing it, in this case, I say, the agreement is void against both parties: for if he never performs the agreement, I shall never have an action against him; nor shall he, if he performs, have an action to demand any thing for his labour, unless it be reduced to certainty what he shall have; and so it seems to me, that if this action on this matter ought to be maintained, that the principal thing which causes the action should be openly set forth in the count, and that is the agreement, which is not good unless it be certainly expressed what he is to have. Wherefore, &c.

*Strange.* It seems to me the contrary, as to what Judge *Martin* has moved, that because no *tort* is supposed by the writ, that the writ ought not to lie. It seems to me that it shall; as suppose, that one makes a covenant with me to be my servant, and then I command him to go with my waggon, and he refuses to do it, I say that I shall have a writ of trespass against him, for his refusal, which is the *nonfeasance* of a thing, and so here.

MARTIN. I grant that, for this last is a departure from your service, for which a good action lies: And, as it truly seems to me, if this action shall be maintained on this matter, for each agreement broken in the world, there will be an action of trespass.

BABINGTON. All that we say is in vain, for they have not yet demurred; and, therefore, (addressing himself to *Strange* and *Rolf,*) plead and say what you wish, or demur, and then it can be sufficiently debated and disputed, at leisure. Wherefore, &c.

which has been stated, and to the objection made to the form of action, in a case of non-performance of a parol agreement. *Martin, J.* when he says, that the action will not lie for the *nonfeasance*, has no reference to the existence, or non-existence of special damage, but merely to the distinction between a *nonfeasance*, and a *misfeasance*. The case was shortly this. An action was brought against a mill-wright, for not making a mill, which he had undertaken to make by a certain day. *Rolf*, who was counsel for the defendant, objected to the writ, because 't did not state a *consideration* for the promise, in which *Babington, Ch. J.* agreed with him. Then *Martin, J.* started another objection, that an action would not lie for the non-performance of a *parol* agreement, without referring to the circumstance of there being a consideration or not. *Babington* replied, differing in opinion from *Martin* on this point; and *Cokain, J.* thought neither objection tenable. *Rolf* replied, confining himself to the first objection made, by himself; and *Strange*, on the other side, in his answer, took notice only of the new objection started by *Martin;* and there being this difference of opinion, the parties were ordered to plead or demur, that the questions raised, might be afterwards, more solemnly debated and considered.

The case of the 19 *Hen.* VI. 49. referred to by *Sir William Jones*, was an action against a smith, on his undertaking to cure a horse of a certain malady, alleging, that he so negligently and improvidently administered medicine, &c. that the horse, &c. The plea traversed the undertaking, and there was considerable dispute, whether the traverse ought to lie on the undertaking or to the negligence. In the course of the argument, the case of a carpenter, for not doing the work, &c. and several others, were cited, in which it was insisted that the traverse must be on the undertaking; now, the undertaking to be traversed, must be intended to be lawful and obligatory, not gratuitous, or a *nudum pactum*.

In the case of 21 *Hen.* VII. 41. which *Sir William Jones* cites from *Brooke*, as " made complete from

ALBANY,
February, 1809.

Thorne
v.
Deas.

ALBANY,
February, 1809.

Thorne
v.
Deas.

the *year book,*" *Fineux,* *J.* said, " if one makes an agree-ment to build a house for me by a certain day, and he does nothing of it, I shall have an action on the case, on this *nonfeasance,* as well as if he had mis-done it ; *for* I am damaged by this :" but the case *Fineux* immediately puts, by way of illustration, clearly shows that he supposed a consideration for such a promise, and that a considera-tion was requisite, and he had in his mind the opinion then prevailing, that on such a *parol* covenant or agree-ment, the party must resort to a court of equity. He says, " and *so* if one makes a bargain with me, that I shall have his land to me and my heirs, for twenty pounds, and that he will make the estate to me, if I pay him the twenty pounds ; *if he will not make the estate to me according to the covenant,* I shall have my action on the case, and will need not to sue out a *subpœna.*"

* See also 1 *Vin.*
277. 1 *Danv.* 32.
. *id. 5.*

The case of *Powtuary* v. *Walton,* cited from 1 *Roll. Ab.* 10.* was that of a farrier, who undertook to cure a horse, and did it so negligently, that the horse died ; and it was said, " that an action would lie, without alleging a consideration ; for the *negligence* is the cause of the action, not the *assumpsit.*" This is within the distinction before laid down, between a *nonfeasance* and a *misfeasance.* The same case is again to be found, in 1 *Roll. Ab.* 91, 92. and in 1 *Vin. Ab.* 563. *Actions,* (*case disceit*) *pl.* 16.

The case mentioned by *Sir William Jones,* in a *note,* from *Statham's Abridgement,* as decided by Justice *Paston,* is that of a blacksmith, and it must be intended of a bind-ing contract, not a mere gratuitous undertaking ; for it is said, " I shall have my action on the case, for through his default, peradventure my horse may die." In all the cases to be found, where an action was held main-tainable, there is a consideration for the promise, and the special damage is assigned, as a reason for maintaining an action of trespass on the case, instead of obliging the party to go into a court of equity.

Again, special damage alone, be it ever so great, will not give a right of action. Neither will an action lie for a

ALBANY.
February, 1805.

Thorne
v.
Deas.

mere injury, without damage. To maintain an action, there must be *damnum et injuria* combined. To constitute an injury, there must be a binding undertaking, or a duty to perform the act, which the party neglects, or violates. The non-performance of a *gratuitous* promise, produces no injury, as the party making such promise, has a right to refuse to perform it; nor can the person to whom it is made, enforce its performance. There is no *legal* obligation violated by the non-performance of such a promise. There can be no legal obligation, where there is no consideration; and if the contract is obligatory, neither party can discharge himself from his liability. Though a person may be deceived by a gratuitous promise, it is not an injury for which an action will lie. It is, at most, a naked lie, or a breach of honour.

3. If the defendant is liable, he must stand in the place of an insurer, and is entitled to every advantage possessed by an insurer. An abandonment is as necessary, as if a policy had been actually effected. There was not a total loss, for it does not appear, but that the vessel may have been got off, after she stranded, and many things may have been saved.

*Radcliff*, in reply, observed, that the plaintiffs and defendant had separate and distinct interests in the vessel; and that though, in regard to third persons, they may be considered in the light of partners, yet, as among themselves, they were merely tenants in common.

Whatever may have been the doctrine of the ancient common law, which, however, is very obscure in relation to the cases cited, it is certain that in modern times, in regard to commercial transactions, in which the purest good faith is required, and which it is the policy of the law in a commercial age, to enforce, a different rule prevails. This is manifest from the cases already cited, and which are stated by *Marshall*, in his treatise on insurance. The principle on which these decisions have proceeded, is the mutual confidence between the parties, and the just reliance

placed by the merchant on his agent, or correspondent, in which the courts, anxious to enforce the rules of morality and good faith, will not permit him to be deceived. In several of the cases, the undertaking has been merely implied from the relative situation of the parties, and their course of dealing with each other. Here was an express undertaking to get the insurance effected, by which the plaintiffs were lulled into security, and were prevented from doing it themselves, or employing another person. It is true that a person may retract such a gratuitous promise; but he must take care to do it in season, and before any damage results to the other party, by his non-performance or neglect.

KENT, Ch. J. delivered the opinion of the court. The chief objection raised to the right of recovery in this case, is the want of a consideration for the promise. The offer, on the part of the defendant, to cause insurance to be effected, was perfectly voluntary. Will, then, an action lie, when one party entrusts the performance of a business to another, who undertakes to do it gratuitously, and wholly omits to do it? If the party who makes this engagement, enters upon the execution of the business, and does it amiss, through the want of due care, by which damage ensues to the other party, an action will lie for this *misfea-sance*. But the defendant never entered upon the execution of his undertaking, and the action is brought for the *non-feasance*. Sir *William Jones*, in his "*Essay on the Law of Bailments*," considers this species of undertaking to be as extensively binding in the *English* law, as the contract of *mandatum*, in the *Roman* law; and that an action will lie for damage occasioned by the non-performance of a promise to become a *mandatary*, though the promise be purely gratuitous. This treatise stands high with the profession, as a learned and classical performance, and I regret, that on this point, I find so much reason to question its accuracy. I have carefully examined all the authorities to which he refers. He has not produced a single adjudged

case ; but only some *dicta* (and those equivocal) from the *Year Books*, in support of his opinion ; and was it not for the weight which the authority of so respectable a name imposes, I should have supposed the question too well settled to admit of an argument.

A short review of the leading cases will show, that by the common law, a *mandatary*, or one who undertakes to do an act for another, without reward, is not answerable for omitting to do the act, and is only responsible when he attempts to do it, and does it amiss. In other words, he is responsible for a *misfeasance*, but not for a *nonfeasance*, even though special damages are averred. Those who are conversant with the doctrine of *mandatum* in the civil law, and have perceived the equity which supports it, and the good faith which it enforces, may, perhaps, feel a portion of regret, that Sir *William Jones* was not successful in his attempt to ingraft this doctrine, in all its extent, into the *English* law. I have no doubt of the perfect justice of the *Roman* rule, on the ground, that good faith ought to be observed, because the employer, placing reliance upon that good faith in the mandatary, was thereby prevented from doing the act himself, or employing another to do it. This is the reason which is given in the *Institutes* for the rule ; *mandatum non suscipere cuilibet liberum est ; susceptum autem consummandum est, aut quam primum renunciandum, ut per semetipsum aut per alium, eandem rem mandator exequatur.* (*Inst.* lib. 3. 27. 11.) But there are many rights of moral obligation which civil laws do not enforce, and are, therefore, left to the conscience of the individual, as rights of imperfect obligation ; and the promise before us seems to have been so left by the common law, which we cannot alter, and which we are bound to pronounce.

The earliest case on this subject, is that of *Watson* v. *Brinth*, (*Year-Book*, 2 *Hen.* IV. 3 *b.*) in which it appears that the defendant promised to repair certain houses of the plaintiff, and had neglected to do it, to his damage. The plaintiff was nonsuited, because he had shown no covenant

and *Brincheley* said, that if the plaintiff had counted that the thing *had been commenced, and afterwards, by negligence, nothing done*, it had been otherwise. Here the court, at once, took the distinction between *nonfeasance* and *misfeasance.* No consideration was stated, and the court required a covenant to bind the party.

In the next case, (11 *Hen.* IV. 33 *a.*) an action was brought against a carpenter, stating that he had undertaken to build a house for the plaintiff, within a certain time, and had not done it. The plaintiff was also nonsuited, because the undertaking was not binding without a specialty, but says the case, *if he had undertaken to build the house, and had done it illy or negligently*, an action would have lain, without deed. *Brooke*, (*Action sur le Case*, pl. 40.) in citing the above case, says, that " it seems to be good law to this day, wherefore the action upon the case which shall be brought upon the assumption, must state that for such a sum of money to him paid, &c. and that in the above case, it is assumed, that there was no sum of money, therefore it was a *nudum pactum.*"

The case of 3 *Hen.* VI. 36 *b.* is one referre to, in the the *Essay on Bailments*, as containing the opinion of some of the judges, that such an action as the present could be maintained. It was an action against *Watkins*, a millwright, for not building a mill according to promise. There was no decision upon the question, and in the long conversation between the counsel and the court, there was some difference of opinion on the point. The counsel for the defendant contended, that a consideration ought to have been stated ; and of the three judges who expressed any opinion, one concurred with the counsel for the defendant, and another (*Babington*, Ch. J.) was in favour of the action, but he said nothing expressly about the point of consideration, and the third (*Cokain*, J.) said, it appeared to him that the plaintiff had so declared, for it shall not be intended that the defendant would build the mill for nothing. So far is this case from giving countenance to the present action, that *Brooke* (*Action sur le Case*, pl. 7, and

*Contract*, pl. 6.) considered it as containing the opinion of the court, that the plaintiffs ought to have set forth what the miller was to have for his labour, for otherwise, it was a *nude pact ;* and in *Coggs* v. *Bernard*, Mr. Justice *Gould* gave the same exposition of the case.

The general question whether *assumpsit* would lie for a *nonfeasance*, agitated the courts in a variety of cases, afterwards, down to the time of *Hen.* VII. (14 *Hen.* VI. 18 *b.* pl. 58. 19 *Hen.* VI. 49 *a.* pl. 5. 20 *Hen.* VI. 34 *a.* pl. 4. 2 *Hen.* VII. 11. pl. 9. 21 *Hen.* VII. 41 *a.* pl. 66.) There was no dispute or doubt, but that an action upon the case lay for a *misfeasance*, in the breach of a trust undertaken voluntarily. The point in controversy was, whether an action upon the case lay for a *nonfeasance*, or non-performance of an agreement, and whether there was any remedy where the party had not secured himself by a covenant or specialty. But none of these cases, nor, as far as I can discover, do any of the *dicta* of the judges in them, go so far as to say, that an *assumpsit* would lie for the non-performance of a promise, without stating a consideration for the promise. And when, at last, an action upon the case for the non-performance of an undertaking came to be established, the necessity of showing a consideration was explicitly avowed.

Sir *William Jones* says, that " a case in *Brooke*, made complete from the Year-Book to which he refers, seems directly in point." The case referred to is 21 *Hen.* VII. 41. and it is given as a loose *note* of the reporter. The chief-justice is there made to say, that if one agree with me to build a house by such a day, and he does not build it, I have an action on the case for this *nonfeasance*, equally as if he had done it amiss. Nothing is here said about a consideration ; but in the next instance which the judge gives of a *nonfeasance* for which an action on the case lies, he states a consideration paid. This case, however, is better reported in *Keilway*, 78. pl. 5. and this last report must have been overlooked by the author of the " essay." *Frowicke*, Ch.

J. there says, " that if I covenant with a carpenter to build a house, and pay him 20*l.* to build the house by a certain day, and he does not do it, I have a good action upon the case, *by reason of the payment of my money; and without payment of the money in this case,* no remedy. And yet, if he make the house in a bad manner, an action upon the case lies ; and so for the *nonfeasance, if the money be paid,* action upon the case lies."

There is, then, no just reason to infer, from the ancient authorities, that such a promise as the one before us is good, without showing a consideration. The whole current of the decisions runs the other way, and, from the time of *Henry* VII. to this time, the same law has been uniformly maintained.

The doctrine on this subject, in the *Essay on Bailments,* is true, in reference to the *civil law,* but is totally unfounded, in reference to the *English* law ; and to those who have attentively examined the head of *Mandates,* in that *Essay,* I hazard nothing in asserting, that that part of the treatise appears to be hastily and loosely written. It does not discriminate well between the cases ; it is not very profound in research, and is destitute of true legal precision.

But the counsel for the plaintiffs contended, that if the general rule of the common law was against the action, this was a commercial question, arising on a subject of insurance, as to which a different rule had been adopted. The case of *Wilkinson* v. *Coverdale,* (1 *Esp. Rep.* 75.) was upon a promise to cause a house to be insured, and Lord *Kenyon* held, that the defendant was answerable only upon the ground, that he had proceeded to execute the trust, and had done it negligently. The distinction, therefore, if any exists, must be confined to cases of marine insurance. In *Smith* v. *Lascelles,* (2 *Term Rep.* 188.) Mr. Justice *Buller* said it was settled law, that there were three cases in which a merchant, in *England,* was bound to insure for his correspondent abroad.

1. Where the merchant abroad has effects in the hands of his correspondent in *England*, and he orders him to insure.

2. Where he has no effects, but, from the course of dealing between them, the one has been used to send orders for insurance, and the other to obey them.

3. Where the merchant abroad sends bills of lading to his correspondent in *England*, and engrafts on them an order to insure, as the implied condition of acceptance, and the other accepts.

The case itself, which gave rise to these observations, and the two cases referred to in the note to the report, were all instances of *misfeasance*, in proceeding to execute the trust, and in not executing it well. But I shall not question the application of this rule, as stated by *Buller*, to cases of *nonfeasance*, for so it seems to have been applied in *Webster* v. *De Tastet*. (7 *Term Rep.* 157.) They have, however, no application to the present case. The defendant here was not a factor or agent to the plaintiffs, within the purview of the law-merchant. There is no colour for such a suggestion. A factor, or commercial agent, is employed by merchants to transact business abroad, and for which he is entitled to a commission or allowance. (*Malyne*, 81. *Beawes*, 44.) In every instance given, of the responsibility of an agent for not insuring, the agent answered to the definition given of a factor, who transacted business for his principal, who was absent, or resided abroad; and there were special circumstances in each of these cases, from which the agent was to be charged; but none of those circumstances exist in this case. If the defendant had been a broker, whose business it was to procure insurances for others, upon a regular commission, the case might possibly have been different. I mean not to say, that a factor or commercial agent cannot exist, if he and his principal reside together at the same time, in the same place; but there is nothing

here from which to infer that the defendant was a factor, unless it be the business he assumed to perform, viz. to procure the insurance of a vessel, and that fact alone will not make him a factor. Every person who undertakes to do any specific act, relating to any subject of a commercial nature, would equally become, *quoad hoc*, a factor; a proposition too extravagant to be maintained. It is very clear, from this case, that the defendant undertook to have the insurance effected, as a voluntary and gratuitous act, without the least idea of entitling himself to a commission for doing it. He had an equal interest in the vessel with the plaintiffs, and what he undertook to do was as much for his own benefit as theirs. It might as well be said, that whenever one partner promises his copartner to do any particular act for the common benefit, he becomes, in that instance, a factor to his copartner, and entitled to a commission. The plaintiffs have, then, failed in their attempt to bring this case within the range of the decisions, or within any principle which gives an action against a commercial agent, who neglects to insure for his correspondent. Upon the whole view of the case, therefore, we are of opinion, that the defendant is entitled to judgment.

Judgment for the defendant.