ELIZABETH TUCKER, Plaintiff, v. CONSTANTIN WAGNER, Defendant.

Supreme Court, Bronx County, June 21, 1928.

Landlord and tenant — liability for injuries to tenant — plaintiff, in drawing water for bath, suffered injuries to hand when porcelain faucet broke — proof shows superintendent had repaired faucet, after complaint, but in negligent manner — Tenement House Law, §§ 102, 103, requires landlord to keep faucets in repair, and landlord is liable.

Defendant landlord is liable to plaintiff for injuries suffered when a porcelain faucet in the bath tub in plaintiff's apartment broke in her hand while she was drawing water for a bath, where it appears that, as a result of plaintiff's complaint to defendant, defendant had the superintendent repair the faucet, but in a negligent manner.

A landlord is charged with liability, where, having chosen to make repairs, the repairs are negligently done and a tenant is injured thereby.

Furthermore, sections 102 and 103 of the Tenement House Law, requiring a landlord to provide proper appliances to receive and distribute an adequate and sufficient supply of water, include a faucet.

ACTION for personal injuries alleged to have resulted from failure of landlord to keep faucet in repair.

*Levy & Hartman* [*Gaylord B. Van Kirk* of counsel], for the plaintiff.

*Frederick Mellor* [*Roy R. Richard* of counsel], for the defendant.

COTILLO, J. This action was instituted to recover damages for personal injuries alleged to have been sustained by the plaintiff on the 20th day of May, 1925. The plaintiff was the wife of one John A. Tucker, who rented a four-room apartment in the defendant's tenement house located at 697 East One Hundred and Thirty-second street. The apartment consisted of four rooms and bath. The bath room contained a bath tub supplied with hot and cold

water by the defendant. The water was supplied to the bath tub through one common outlet, but the hot and cold water leading to this outlet were separately controlled by individual handles or faucets, one being designated " hot " and the other as " cold." The handle to the hot water faucet was covered by a piece of porcelain and in order to turn the hot water on or off it was necessary to use this piece of porcelain as the handle of the faucet.

On May 20, 1925, the plaintiff, while drawing a bath for her daughter and after obtaining a sufficient amount of hot water, attempted to turn off the supply and in doing so grabbed hold of the porcelain handle. While in the act of turning the faucet off the porcelain broke in her hand resulting in her receiving serious and painful injuries.

The faucet and its porcelain covering had been in the premises for a period of over two years. About three months prior to May 20, 1925, the porcelain handle became broken, having a crack in it about two and a half to three inches long extending almost the entire length of the handle and about one-tenth of an inch in width. The plaintiff complained to the defendant who had his superintendent fix the broken handle by cementing it. The faucet when it broke on the day of the accident broke in the same place as repaired by the superintendent. The defendant entered a general denial.

The plaintiff bases her claim for relief upon two causes of action each based on the negligence of the defendant. The causes of action are as follows:

1. For the defendant's failure and neglect to keep the faucet in proper repair and in good condition after notice of the defect therein had been given to him.

2. For attempting or making repairs to the defective faucet in a negligent manner without remedying or removing the defect.

Taking up the second cause of action first, the proof adduced upon the trial amply satisfies the court that the faucet in question was repaired by the superintendent after instruction by the defendant and that the repairs were negligently made. The law is well settled that a landlord is charged with liability where having chosen to make repairs, the repairs are negligently done and a tenant is injured thereby. *Marks* v. *Nambil Realty Co., Inc.* (245 N. Y. 256) settled the law on this subject. Chief Judge CARDOZO in writing the opinion for the Court of Appeals in *Marks* v. *Nambil Realty Co., Inc.* (*supra*) held as follows: " The landlord, though a volunteer in making the repairs, is liable, none the less, for negligence in making them. ' It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the

Supreme Court, June, 1928.          [Vol. 132

duty of acting carefully, if he acts at all ' (*Glanzer* v. *Shepard*, 233 N. Y. 236, 239). The distinction in such cases is the old one between nonfeasance and misfeasance (*Thorne* v. *Deas*, 4 Johns. 84, 96; *Siegel* v. *Spear & Co.*, 234 N. Y. 479, 483; Bohlen, Studies in the Law of Torts, p. 80). A landlord in these circumstances is not charged with liability on the basis of the non-performance of a voluntary promise. He is charged with liability because having chosen to perform he has thereby become subject to a duty in respect of the manner of performance. The cases are many in which liability has been enforced upon that footing for the protection of a tenant (*Gregor* v. *Cady*, 82 Me. 131; *Gill* v. *Middleton*, 105 Mass. 477; *Buldra* v. *Henin*, 212 Mass. 275; *Miller* v. *Fisher*, 111 Md. 91; *Charney* v. *Cohen*, 94 N. J. L. 381, 383; *Mann* v. *Fuller*, 63 Kan. 664).

" We recall these familiar principles because they seem to have been overlooked in cases in the Appellate Division relied on by the defendant here (*Marston* v. *Frisbie*, 168 App. Div. 666; *Wynne* v. *Haight*, 27 App. Div. 7). There is a suggestion, if not a ruling, in these cases, that to make the landlord liable, the negligent repairs must have aggravated the defect, so that what was dangerous before became more dangerous than ever. We cannot yield assent to this restriction of the field of duty. The tenant does not have to prove that by the negligent making of the repairs what was wrong has been made worse. His case is made out when it appears that by reason of such negligence what was wrong is still wrong, though prudence would have made it right."

The first cause of action involves a question which seems to be undetermined and uncertain as far as opinions of our courts are concerned. The negligence claimed is the failure to keep the faucet in repair and a claim for damages in my mind arises under sections 102 and 103 of the Tenement House Law.

Section 102 of the Tenement House Law provides as follows: " Every tenement house and all the parts thereof shall be kept in good repair * * *."

Section 103: " The owner shall provide proper and suitable tanks, pumps or *other appliances* to *receive* or *distribute* an *adequate* and *sufficient supply* of * * * water."

At common law there was no duty resting on the landlord of an apartment house to repair the rooms demised. (*Altz* v. *Leiberson*, 233 N. Y. 16.)

Defendant resists the plaintiff's claim in this action on the ground that section 103 of the Tenement House Law did not intend to place a duty upon the landlord to keep in repair the faucets in connection with the water supply except in the event that the

defect complained of prevented a proper reception and distribution of an adequate supply of water. This contention on the part of the defendant I believe to be untenable. It seems to me to hold this would be clearly a decision on the part of the court that would relieve the landlord of any liability except for the failure to supply water. The section itself very clearly states as indicated above: "The owner shall provide proper and suitable tanks, pumps or other *appliances* to *receive* or *distribute* an adequate and sufficient supply of * * * water." It would take a great stretch of the imagination to hold that this did not mean that the handles to the faucets which control the supply of water were not appliances within the terms of the section. There was no dispute raised but that the distribution of the water was controlled by this handle and that the porcelain that broke was a part of the handle and was put there in order to make the handle not only decorative but useful. In support of his contention the defendant has cited the case of *Block* v. *Baldan Realty Co., Inc.* (129 Misc. 906). The learned judge writing the majority opinion in that case held: "Plaintiff makes no complaint of lack of water. To bring the pending case within this section it would have been necessary to prove not merely that the faucet was defective but also that because of such defect an adequate and sufficient supply of water was not received and distributed. There is nothing to show that the owner did not provide proper and suitable appliances to receive and distribute an adequate supply of water. We do not know the number of such appliances nor their location in the premises. If such were provided, apart from the knob of the bath tub, which in this case is said to have been defective, the owner discharged the duty placed upon him by the statute."

This decision that the defendant depends upon is a decision of the Appellate Term of this department, which was not a unanimous one, but in which Mr. Justice BIJUR dissented with the following opinion: " In the present case, however, there is a direct statutory mandate to the landlord to keep faucets in repair. Under section 103 ' every tenement house shall have water furnished in sufficient quantity at one or more places on each floor * * *' and ' the owner shall provide proper and suitable tanks, pumps or other appliances to receive and to distribute an adequate and sufficient supply of such water.' Surely a faucet is an appliance used to distribute water."

The defendant has evidently overlooked section 102 of the Tenement House Law, which provides as follows: " Every tenement house and all the *parts* thereof shall be kept in good repair."

I believe the majority opinion in *Block* v. *Baldan Realty Co., Inc. (supra)* is too narrow a view to take of the effect of section 103

of the Tenement House Law. I prefer to follow what I believe to be the controlling reasoning as set forth in *Altz* v. *Leiberson* (233 N. Y. 16).

The court is of the opinion, in view of the above-mentioned authorities and sections 102 and 103 of the Tenement House Law, that the plaintiff is entitled to judgment and judgment is directed in her favor in the sum of $3,500. Thirty days' stay and sixty days to make a case.