LAWRENCE FLEMING and Another, Plaintiffs, *v.* ELIZABETH OPPEL, Defendant.

City Court of New York, Queens County, June 24, 1937.

*Julian Jawitz*, for the plaintiffs.

*Saulsbury & D'Auria* [*Thomas A. Saulsbury* of counsel], for the defendant.

LIVOTI, J. This is a motion for a new trial. The jury returned verdicts in favor of both plaintiffs, husband and wife respectively. Gladys Fleming, the wife, was injured when her hand came in contact with the cover of a washtub while she was in the act of opening a faucet therein. Her hand struck the jagged and broken edge of the tub cover, and she sustained an injury to her right index finger. The apartment in question consisted of a kitchen and bedroom in a three-family house. The building, therefore, is classified as a multiple dwelling. It was testified to by plaintiffs and denied by the defendant that the landlord, who lived in the same building, was notified on several occasions prior to the accident that one of the hinges of the tub cover was completely broken off and the inside edges of the cover at the point where the hinge had been was jagged and rusty. The relevant portions of the Multiple Dwelling Law are herein set forth: § 4, subd. 1: " A ' dwelling ' is any house or building or portion thereof which is occupied in whole or in part as the home, residence, or sleeping place of one or more human beings." Subd. 2: " A ' family ' is either a person occupying a dwelling and maintaining a household, * * * or two or more persons occupying a dwelling, living together and maintaining a common household." Subd. 3: " A ' multiple dwelling ' is a dwelling which is either rented, leased, let or hired out, to be occupied, or is occupied as the abode, residence or home of three or more families living independently of each other." Subd. 9: " A ' tenement house ' is any house or building or any portion thereof, heretofore erected, which is either rented, leased, let or hired out,

to be occupied or is occupied, in whole or in part, as the home or residence of three families or more, living independently of each other and doing their cooking upon the premises, and includes apartment houses, flat houses and all other houses so erected and occupied." § 75: "Water supply. In every multiple dwelling hereafter erected where space is provided for cooking there shall be in every apartment a proper sink with running water and with a two inch waste and trap. The owner shall provide proper appliances to receive and distribute an adequate and sufficient supply of water in each apartment or suite of rooms at all times of the year." § 78: "Repairs. Every multiple dwelling and every part thereof shall be kept in good repair."

The Multiple Dwelling Law destroys the common-law immunity that landlords enjoyed in that they are now bound to keep in repair a multiple dwelling and every part thereof where they have not parted with full possession or control. A reading of the cases discloses that where the defective condition claimed is the building itself or such a part so annexed as to be termed a fixture the owner, if he has sufficient notice of the defective condition and that condition is the proximate cause of the injuries complained of, may be held responsible in damages. A glance at section 75 of the Multiple Dwelling Law shows that the owner must maintain sinks with running water. By force of the same provision of law, an owner is made liable for failure to repair water faucets. (*Polackoff* v. *Sonn & Co., Inc.,* [1934] 264 N. Y. 702; *Tucker* v. *Wagner,* [1928] 132 Misc. 402.) Section 76 of the Multiple Dwelling Law requires water closet accommodations. The landlord in the case of *Jandorf* v. *Asinari* ([1929] 135 Misc. 373) was held liable for a defective flushometer. In the case of *Block* v. *Baldan Realty Co. Inc.* ([1927] 129 Misc. 906), the court held that the landlord was not liable where a faucet in the bathroom broke. In that case the violation of the Tenement House Law was not alleged or proved and the court very properly based its holding on the non-liability of owners under the common law.

It is undisputed that where the injury results from defective water supply the landlord is liable. It follows that if the injury results from defective pipes supplying the water there is likewise liability. Water pipes are fixtures and part of the realty built into a house and so annexed that they may not be removed without appreciable damage. An article which is physically annexed to a water pipe becomes realty too and is termed a fixture. Whatever is part of the realty is part of the dwelling. The court in *Altz* v. *Lieberson* ([1922] 233 N. Y. 16, 18), among other things, held: "No doubt the defect itself must be one that has relation to the

maintenance of the building as a tenantable habitation. * * * The meaning is that the premises shall not be suffered to fall into decay. The duty to prevent this, which, in part at least, once rested upon the tenant, is now cast upon another. A narrower construction ignores, not only the letter of the statute, but the evil to be cured. A ' tenement house,' as the meaning is enlarged by the definition of the statute, may include the dwellings of the rich. In its primary and common application, it suggests the dwellings of the poor * * *. We may be sure that the framers of this statute, when regulating tenement life, had uppermost in thought the care of those who are unable to care for themselves. The Legislature must have known that unless repairs in the rooms of the poor were made by the landlord, they would not be made by any one."

A washtub in my opinion is part of the dwelling and affects the tenantable habitation. In the case at bar Gladys Fleming used the tub to wash her baby's clothes. Without the tub the apartment would not be tenantable as far as these plaintiffs were concerned. Sanitary precautions dictate that tubs should have covers to prevent the escape of obnoxious odors from soiled clothes which are allowed to soak.

It was not unreasonable for the jury to find that the accident which is the subject of this action was foreseeable. In addition, there was evidence that the defective condition of the tub cover was called to the landlord's attention. I am unable to concur in the holding in *Cooperman* v. *Anderson* ([1935] 158 Misc. 155), in so far as it is cited for the proposition that a washtub cover is not part of the dwelling. There is an additional fact in the case at bar which is sufficient to distinguish it from the *Cooperman* case. The court said (158 Misc. at p. 157): " In the present case there is no evidence that the wash tub cover was dangerous when installed, and that the landlord knew or ought to have known the probable results of the danger." In the case under consideration the reasonably prudent owner who has notice of such a defect should have anticipated that some accident was likely to happen when there was no hinge to the tub cover and where the tub cover had a jagged and rusty edge. The jury was justified in so finding.

The motion for a new trial is denied.