## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

### October 25, 1918.

## THE PEOPLE v. ALICE I. ASHLEY.

(184 App. Div. 520.)

(1.) DISORDERLY PERSON—TELLING FORTUNES*—SPIRITUALIST—EVIDENCE.

Upon the prosecution of a defendant for ''pretending to tell fortunes'' in violation of subdivision 3 of section 899 of the Code of Criminal Procedure, the defendant denied that she was a fortune teller or pretended to tell fortunes, and claimed that she was the president and a minister of the ''Brooklyn Spiritualist Society'' and that she simply gave the complaining witness ''advice.'' The defendant claimed to summon departed spirits to aid her in answering the complainant's questions.

Held, that the evidence was sufficient to justify a finding that the defendant was guilty of telling fortunes in violation of the statute, thereby constituting her a disorderly person.

(2.) CODE CRIMINAL PROCEDURE, § 899, SUBDIVISION 3.

Subdivision 3 of section 899 of the Code of Criminal Procedure, making one a disorderly person who pretends to tell fortunes, is not unconstitutional, upon the ground that it deprived the defendant of the exercise and enjoyment of her religion, profession and worship, in violation of article 1, section 3, of the State Constitution, and in violation of the Constitution of the United States.

(3.) SAME—INTERFERING WITH RELIGIOUS BELIEF AND OPINIONS OF CITIZEN.

The State may not interfere with the religious beliefs and opinions of a citizen, but it may prohibit acts and practices which are deemed to be detrimental to the community.

APPEAL by the defendant, Alice I. Ashley, from an order of the County Court of Kings county, entered in the office of the clerk of said county on the 10th day of December, 1917, affirm-

* See Note, Vol. 25, p. 538.

ing the finding of a city magistrate adjudging defendant to be a disorderly person, under section 899, subdivision 3, of the Code of Criminal Procedure, and requiring her to give security for good behavior.

*John P. Maloney,* for the appellant.

*Harry G. Anderson, Assistant District Attorney (Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

KELLY, J.:

The Code of Criminal Procedure provides in section 899: " The following are disorderly persons: * * * 3. Persons pretending to tell fortunes," and it is provided in section 901* that if the magistrate is satisfied that the accused is a disorderly person, he may require that the person charged give security that he will be of good behavior for the space of one year, and in section 902, if the security is given the defendant must be discharged, otherwise he must be convicted, and (§ 903) committed to the city prison or penitentiary for not exceeding six months at hard labor or until the security is given. In this case the magistrate having found the defendant guilty, she gave the security required. The evidence before the magistrate presented a question of fact whether the defendant was an offender against the statute, and his finding is sustained by the evidence. The defendant denied that she was a fortune teller, or pretended to tell fortunes, claiming that she was the president and a minister of the " Brooklyn Spritualist Society." She denied that she " prophesied " for the complaining witness, because, as defendant said, " it is against the law." Her defense was that she simply gave the complaining witness " advice." Dr. George

---

* Since amended by Laws of 1917, ch. 517.— [REP.

B. Warne of Chicago, a witness called by defendant, testified that he was a trustee and president of the "National Association of Spiritualists;" that defendant was a "medium" and president of the society with which she was connected; that the power possessed by mediums to receive communications from departed spirits was not in any way controlled by the society, nor was it held only by members of the organization; that it was not confined to any creed or nationality or dependent in any way upon education. Asked to distinguish between "fortune telling" and foretelling as practiced by mediums, he answered, "The foretelling, if practiced by mediums, comes under the same classification as a prophesy of the Old Testament. * * * You will find it recorded in substance by Paul, in speaking about diversities of spiritual gifts. He wrote, 'To some are given gifts of healing, to others interpretation of the Word, to others to speak in unknown tongues, to others the power of prophesying, and to others the discerning of spirits.'" Again asked to distinguish between fortune telling and foretelling, the witness said: "In the case of the spiritualist medium fortune-telling is the doing of the act so-called for the sake of compensation or gain; in the case of the medium prophesy is done directly under the inspiration of a spirit outside of the individual medium." He also testified that the power which the mediums of the society possessed was not exercised for gain and was only compensated by the societies which they served. The record in this case contains the evidence of the complaining witness, which was believed by the magistrate and which discloses a transaction differing materially from the prophesies of the Old Testament, nor were the acts of the defendant, appellant, similar to those of the seers and prophets of the old law or to those to whom had been given the power of prophesying related by Paul under the new dispensation. The prophets and seers of the Old Testament were not "fortune tellers," because we find fortune telling prohibited

as far back as the book of Deuteronomy, where we find it writ-
ten: " Neither let there be found among you any one  *  *  *
that consulteth soothsayers, or observeth dreams and omens.
Neither let there be any wizard,— Nor charmer, nor any one
that consulteth pythonic spirits, or fortune-tellers, or that
seeketh the truth from the dead.  For the Lord abhorreth all
these things, and for these abominations he will destroy them
at thy coming."  (Deuteronomy, chap. 18, v. 10-12.*)  And
the apostle Paul, cited by defendant's witness, not only con-
demned witchcraft and fortune telling by the method of sum-
moning departed spirits, which was the method followed by the
defendant here, but, as we know, he had very decided views
against women acting as prophets or ministers.  I presume
prophets and seers had to maintain themselves or be maintained
in some way, but there is no record in the scriptures referred
to by defendant's witness of any such practical business methods
as are related in the record here.  Witches appear to have been
in bad repute in all jurisdictions since 2000 B. C., but witches,
bad as they were, always occupied a different plane from mere
" fortune tellers."  The latter have always been classed with
rogues and mountebanks and generally disreputable members of
society to be summarily dealt with for the good of the com-
munity.  (4 Black. Comm. 62; Stat. 39 Eliz. chap. 4.)  The
early English statutes show that the purpose of their enactment
was the more effctually to prevent such practices whereby
ignorant persons were frequently deluded and defrauded.
Encouraging these people to rely upon and guide their conduct
by force of so-called occult suggestions obtained from the spirits
of the dead through the medium, was thought to be demoraliz-
ing.  The story of the complaining witness, which was believed
by the magistrate who saw and heard her as he saw and heard
the defendant, does not read like the Old Testament or the New.

---

* Douay Version.— [REP.

On March 8, 1917, one Margaret Seller, apparently at the request of the police department, went to the defendant's home at 28 Irving place. The defendant responded to a ring of the door bell. The defendant ushered the complainant into the parlor. There the complainant said to the defendant that a Mrs. Handley or Henderson sent her there, and defendant said that she would see her in a little while. The defendant went upstairs, returned a few minutes later and received complainant at a table, the defendant sitting opposite. The defendant " medium " took complainant's hand and said, " You are very sensitive owing to a dominant nature which seems to govern you." The defendant hesitated and then asked complainant whether she wanted to ask any questions. The complainant said, " Will I get the position for which I am looking ? Will I marry soon ? " The defendant said : " The spirit of your mother comes to me and says that you are to do as you are prompted yourself." The defendant hesitated again and said : " Yes, you will get the position and you will marry the man and you will have a small family of two or three children." The complainant asked the defendant how much she charged, and the defendant replied " a dollar." The complaining witness testifies that she paid the dollar. The defendant questioned concerning this important incident, said she did not ask the complaining witness for money and " would not .* * * have asked [her] for any money," and that it would have made no difference whether complainant had placed any money at all on the table. Asked the direct question, " Q. What do you do with the money ? " she answers, " It goes to supporting our society." The defendant said : " I had advised. her, and then she put the money down." Defendant's story of her dealing with the complaining witness is as follows : " So I took her into the parlor, and she sat down by the table, and I described the spirit of a lady standing beside her, and I said to her, ' It is a very motherly spirit. Is your mother in spirit life ? ' and she

said ' Yes.' Then I said, ' I will see what advice I can get for you.' I told her about being a sensitive person. I told her I saw papers lying on the table before her, and I asked her if she had anything to do with handling papers. I said, ' I don't know just what the papers are, but I see them before you,' and she said she did. Now, I said, ' If there is any question that you wish to ask me you may do so,' and she asked, ' Will I get a position soon? ' I said, ' Anyone with your ability ought not to be without a position very long.' Then I say, ' You may ask me other questions.' She said, ' Will I marry during the year? ' and I said, ' That remains for you to say whether you will or not.' Then she said, ' Will I have any family? ' I said, ' It is always best for people to have a family because they seem to be happier with a family than without it,' and she put money down on the table, and I said, ' Is there any more questions you wish to ask? ' and she said, ' No, I am in a hurry. I live away uptown in New York and don't want to be out too late.' " The learned counsel for defendant . presents two points in this appeal. He says, *first,* that there was no violation of sub-division 3 of section 899 of the Code of Criminal Procedure, for (a) there was no pretense to tell fortunes proved; (b) there was no fraud or deceit shown or indicated by the State on the part of the defendant. While the information given by the defendant does not seem to be very valuable and hardly worth the dollar paid or " put down," still the Legislature in its wisdom enacted the statute for the protection of the entire community, the credulous as well as the more seasoned members of the body politic. Evidently they thought .the habit was bad and might lead from bad to worse. While defendant's story of what she said to the complaining witness would indicate that she was traveling on safe ground, it is hard to see how the complaining witness could be induced to give up a dollar for a statement that she was to " do as you are prompted yourself " or " Any-one with your ability ought not to be without a position very

long." Nor does the defendant's testimony as to her answer to the inquiry of complaining witness concerning the delicate subject of her prospective marriage and the size of the subsequent family seem reasonable. To tell the inquirer as to whether she would marry, " That remains for you to say whether you will or not," and as to children, " It is always best for people to have a family because they seem to be happier with a family than without it," could not have been very satisfying.

At any rate, the magistrate did not believe the defendant, and even taking the witness Warne's definitions and distinctions, the evidence justified the finding that she was telling fortunes for money in the ordinary sordid sense condemned from time immemorial by the law.

Defendant's second point is that the statute is unconstitutional in that it deprives the defendant of the exercise and enjoyment of her religious profession and worship in violation of article 1, section 3, of the State Constitution, and in violation of the Constitution of the United States. Applying Doctor Warne's interpretation of the tenets of spiritism under the facts as found by the court, defendant was telling fortunes for money. This modern attempt to excuse violations of lawful salutary police regulations enacted for the protection of the community, by appeals to constitutional rights and religious beliefs, does not find favor with the courts. The State may not interfere with the religious beliefs and opinions of a citizen, but it may prohibit acts and practices which are deemed to be detrimental to the community. (Reynolds v. United States, 98 U. S. 145, 165; Mormon Church v. United States, 136 id. 1; People v. Pierson, 176 N. Y. 201, 210.) These religious and constitutional arguments are always important but should be carefully examined to see that they are not a cover for some old-time wrongdoing or indecency sought to be brought to life again. This seems to be such a case. There is

a consideration of this particular statute in an opinion written by Judge NOTT of the Court of General Sessions, New York county, in People v. Malcolm (90 Misc. Rep. 517), from which I quote:

" So far as the testimony involved an issue of fact, as the witnesses were before the magistrate who had the benefit of seeing them and hearing them testify, his finding that the testimony of the complaining witness was true cannot be disturbed here. The defendant, however, contends, *first,* that as the statute provides that those who ' pretend ' to tell fortunes are disorderly persons, an element of deceit or fraud must be shown in order to justify a conviction; and, *second,* that where the efforts of the defendant are based upon so-called science or system such as astrology or palmistry is claimed to be, the prediction of future events does not constitute fortune telling within the meaning of the statute. On the other hand, the people contend, *first,* that the words ' pretending to tell fortunes ' in the statute simply signify the fact that the Legislature deemed it an impossible thing to tell fortunes and made it unnecessary to present proof that fortunes were really told, by providing that any one pretending to tell fortunes should be convicted. And *second,* that, as the statute contains no exceptions as to the method employed by defendants, any prediction of future events for hire is prohibited. Should the first contention of the defendant be upheld, it would be obvious that no person could be convicted under this statute until the lapse of time had proved that the prophecy was false, which would nullify the efficacy of the statute. In my opinion the Legislature employed the language of the statute to signify its disbelief in human power to prophesy human events. If this is so, as the statute contains no exceptions, I am unable to see that the basis on which such prophecies are made or the methods by which such prophecies are arrived at can be material. It is obvious that where a palmist or astrologer merely deduces

the character of the person consulting, and gives general advice as to the future, based upon such reading of character, no telling of fortunes is involved; but in this case the defendant went much further and prophesied as to specific events, such as marriage, death and travel. In my opinion, therefore, she brought herself within the language of the statute and was properly convicted."

The judgment of the County Court of Kings county affirming the judgment of conviction of the Magistrate's Court is affirmed.

THOMAS, MILLS, RICH and PUTNAM, JJ., concurred.

Judgment of the County Court of Kings county affirming judgment of conviction of the Magistrate's Court affirmed.