CECILIE JANDORF and HOWARD JANDORF, Plaintiffs, *v.* HELENA L. GREENLANDER ASINARI, Defendant.

City Court of New York, Bronx County, December 24, 1929.

*Gustav Steiner*, for the plaintiff.

*Bernard J. Vincent* [*Thomas F. X. McCarthy* of counsel], for the defendant.

DONNELLY, J. The motions to dismiss the complaint (1) when plaintiffs rested, and (2) when both sides rested, are denied, with

an exception to defendant in each instance. The defendant's motion to set aside the verdict is also denied, with an exception to defendant. Upon the question of the defendant's negligence, and the freedom from contributory negligence of the plaintiff Cecilie Jandorf, the plaintiff sustained the burden imposed upon her, the requirements of which were set forth in the charge to the jury, to which no exceptions or request were taken or offered by defendant's counsel.

While visiting her friend, Mrs. Strauss, at the latter's apartment in the defendant's premises, Mrs. Jandorf had occasion to visit the lavatory in the bathroom of the apartment, and in pulling the flush handle, it cut into her hand, inflicting a jagged, irregular laceration in the web between the thumb and index finger of her left hand.

By section 102 of the Tenement House Law it is the duty of the owner of premises answering the description of a tenement house, to keep the same and every part thereof in good repair. Under section 103 of the same law, " every tenement house shall have water furnished in sufficient quantity at one or more places on each floor * * *. The owner shall provide proper and suitable tanks, pumps or other appliances to receive and to distribute an adequate and sufficient supply of such water at each floor in the said house, at all times of the year, during all hours of the day and night."

In *Block* v. *Baldan Realty Co., Inc.* (Appellate Term, First Department, 129 Misc. 906), in which a broken faucet handle was involved, Mr. Justice Bijur, who wrote the dissenting opinion, among other things, said: " Surely, a faucet is an appliance used to distribute water." In *Tucker* v. *Wagner* (Supreme Court, New York county, 132 Misc. 402), where the plaintiff was injured by a broken faucet handle, Mr. Justice Cotillo said: " I believe the majority opinion in *Block* v. *Baldan Realty Co.* (*supra*) is too narrow a view to take of the effect of section 103 of the Tenement House Law. I prefer to follow what I believe to be the controlling reason as set forth in *Altz* v. *Leiberson* (233 N. Y. 16)." In the case just cited the plaintiff was injured by a falling ceiling. There the court had under review the scope and effect of section 102 of the Tenement House Law, and stated the extent of the duty of the defendant in that particular case, as well as the obligation of landlords generally, to keep their premises and every part thereof in good repair, in obedience to the provisions of that section. I am inclined to the opinion that the duty there defined includes the obligation to keep in repair a faucet or similar contrivance used to distribute water. This view appears to be sustained by two decisions sub-

sequent to *Block* v. *Baldan Realty Co.* (*supra*). In *Katz* v. *Brunor Realty Corp.* (Supreme Court, New York county, Special Term, Law Journal, Feb. 24, 1928) Mr. Justice VALENTE said: " This is a motion by defendant for judgment on the pleadings. The action is in negligence and is brought by a tenant against his landlord by reason of a defective faucet in the bathroom, which caused his injury. The basis of plaintiff's suit is defendant's failure to perform a statutory duty to keep the premises — a part of a building under the Tenement House Law — in repair. In support of the motion defendant cites *Block* v. *Baldan* (129 Misc. 906) in which the Appellate Term held that a landlord is not liable, under section 103 of the Tenement House Law, for injuries suffered by the plaintiff when a handle on a faucet in the bathroom of plaintiff's apartment broke and injured her hand. In view of the strong dissenting opinion of Mr. Justice BIJUR, I consider the question still debatable, particularly in view of the language of section 103, which requires the owner to provide proper and suitable tanks, pumps or other appliances to receive and to distribute an adequate and sufficient supply of water. The rule refers both to the appliances as a whole and portions thereof. Even if the faucet is not an appliance used to distribute water, it certainly is a part of a system of contrivances which constitutes such appliance. The motion is, therefore, denied."

In *Rosenfeld* v. *Satizel Realty Corporation* a motion made in this court, Bronx county, by the defendant for judgment on the pleadings, and in which action the plaintiff sued to recover for injuries alleged to have been sustained by the handle or knob on the water faucet in the bathroom breaking in her hand, was denied. On December 20, 1928, the Appellate Term unanimously affirmed the order entered upon the denial of said motion.

In *Kagan* v. *Baxter* (134 Misc. 248) all that the evidence showed was that after complaint was made that the faucet was loose, it was tightened, and that the degree of pressure necessary to make it turn was dependent upon the force applied to it by the particular person using it. There was no evidence that the faucet was even slightly cracked, so that, upon repetition of its use, it might break and injure the person handling it. It was there held that, upon notice to the landlord of this condition, it would be his duty to remove it, and, if he failed in this respect, after such notice, he would be liable in damages if an injury ensued. There cannot be read into this decision an intention to limit it to the case of a faucet that was simply loose. Conceivably, a faucet or knob or other part of a handle for turning on and shutting off water may become sufficiently loose to be a source of injury to the one using it.

In the instant case there was evidence by plaintiff before she rested amply sufficient to permit the jury to find that the handle of the flushometer was not merely loose but that it was cracked before plaintiff used it. One of the defendant's witnesses who examined the handle shortly after the accident testified that he found " the flush-out handle broke; " (sic) part (the porcelain) was sticking on the handle, and this he knocked off with a hammer; the rest was on the floor. He further testified that the handle broke lengthwise; not all the length, but just part of it, and the piece that broke off ran with the length of the handle. If this witness had to hammer off the remaining part of the handle from its metal arm, the jury could infer that the other half of the handle would not have fallen off by the simple forward movement of Mrs. Jandorf's hand in pulling the flush, unless the porcelain part was loose and had a defect in it. That there was such a defect the jury could also infer from the testimony of plaintiff's witnesses that running lengthwise through the porcelain, which had been fastened to the metal by cement, was a dark streak, or line, or stripe, or *fissure*, and that this dark stripe or streak was no part of the ornamentation on the porcelain. Another witness called by the defendant, an employee of the real estate firm that collected the rents of defendant's premises and looked after the major repairs, testified, on cross-examination, that the annual rent of Mrs. Strauss' apartment was $4,000. He was then asked this question, " For $4,000, the tenant was entitled to have her apartment, under her leasing arrangement with you, kept in good condition? " to which he promptly answered, " Absolutely." There was no objection to this testimony by defendant's counsel. From this testimony, and quite apart from the duty imposed upon the defendant by the provisions of the Tenement House Law, the jury may very well have concluded that the landlord's agreement to keep the apartment in good condition expressly included repairs to a defective flushometer in the bathroom, which was described by this witness as a minor repair of which the defendant's superintendent, Kirby, would have charge.

Ten days' stay of execution, and thirty days to make and serve a case, allowed.