In the Matter of the Estate of HELEN G. STORTS, Deceased.

Surrogate's Court, Kings County, November 27, 1931.

*Copeland & Elkins*, for the executor.

*John J. Barry*, special guardian.

*Delafield, Thorne, Burleigh & Marsh*, for the Bank of America National Association, as substituted trustee.

WINGATE, S. Testatrix's will, after the erection of a number of trusts for her children, provided in its "5th" item: "I give to my said executor and trustee full power to sell, without application to court, any and all of my said property, whether real or personal, and to invest and reinvest the proceeds thereof as in his judgment he may deem best."

At her death all of the trust beneficiaries were infants, one being under the age of fourteen. The trustee named in the will was over seventy. The trusts are to continue until the children respectively attain the age of twenty-five. In view of his advanced years, the parties petitioned for the appointment of a trustee in place of the one nominated by testatrix, and their nominee has been named and has qualified.

Certain assets of the estate do not conform to the requirements for legal investments, but the parties deem their present sale unwise owing to the low prices now obtainable consequent upon the existing business stagnation. In this connection, the substituted trustee raises two questions. The first relates to its authority under the terms of the will to take or hold other than legal investments. In view of the circumstances of the estate, the advamced age of the trustee named and the probability that the term of at least some of the trusts will extend beyond his life, the court is of opinion and determines that it was the intention of testatrix that a possible successor trustee should be fully vested with the broad discretionary powers granted by her to the original trustee in the portion of the will quoted. (*Matter of White*, 135 Misc. 376, and cases cited; *Matter of Kronson*, 140 id. 102.)

The second problem propounded by the substituted trustee is that if the court determines that the taking of the non-legal investment by it is proper, " that this court also direct that said substituted trustee shall be entitled to retain the same for a reasonable time as part of the trust fund and that such direction define what period of time a reasonable time shall comprise and authorize your respondent to apply to this court from time to time for further instructions."

Where a discretionary power is vested in a trustee, the situation of the fiduciary in relation thereto is precisely what the connotation of the phrase implies. It has the right to do a certain act if in accordance with the dictates of prudence, but it is under no legal compulsion respecting its performance. In this case the court has affirmed the existence of such a power on the facts demonstrated. As a result, the substituted fiduciary has the right to take over the property in question. Such right to take, inevitably involves the authorization to hold for a " reasonable time," which is simply

another method of saying that the propriety of retention will continue so long as the dictates of prudence, as applied by the average reasonable man in his own like affairs, indicate the wisdom of such a course. (*Matter of Pollock*, 134 Misc. 212, 217; *Matter of White*, 135 id. 377, 385; *Matter of Quinby*, 134 id. 296, 302, and cases cited in these three cases.)

The successor trustee, however, asks the court to go farther than this — to delve into the future, and to state a definite period during which all the pertinent conditions respecting these investments will be such that a prudent man would continue to hold them. The impression of some laymen to the contrary notwithstanding, few courts deliberately perpetrate a palpable absurdity. That is precisely what the trustee here asks the court to do.

What the trustee here asks is that the court foretell future events in relation to the particular securities in question. While the court is not of the opinion that any ulterior motive prompted this request, nevertheless it is a fact that no less distinguished a tribunal than the Appellate Division of this Department in *People* v. *Ashley* (184 App. Div. 520, 526) sustained the contention that " any prediction of future events for hire is prohibited " by subdivision 3 of section 899 of the Code of Criminal Procedure, basing its opinion on the belief that " the Legislature employed the language of the statute to signify its disbelief in human power to prophesy human events." Since the court unquestionably receives remuneration for the performance of its duties, it might be a matter of difficulty to determine that a compliance with respondent's request did not constitute a violation of the terms of this decision, with its consequent classification of the court as a disorderly person. However this may be, the court expressly disclaims any ability as a fortune teller, and, therefore, declines to accept the invitation to predict the precise moment when the general pertinent conditions will have reached a stage such as to make the retention of the investments in question no longer a prudent act. This is a question of business judgment for the fiduciary, for the determination of which it is paid and which it, alone, must decide. (*Matter of Weissman*, 140 Misc. 360, 363; *Matter of Ebbets*, 139 id. 250, 252; *Matter of Wander*, 141 id. 584.)

The responsibility of the trustee in this regard is, however, not as onerous as it seems to suppose. Even in respect to non-legal investments acquired by its own act pursuant to testamentary authorization, the chief requirements of the fiduciary are diligence and good faith, the non-exercise of either of which the fiduciary would be the first to repudiate. Perhaps a study of the opinion in *Matter of Pollock* (134 Misc. 212) and some of the cases cited on page 217 of that decision, such as *Crabb* v. *Young* (92 N. Y.

56), will tend somewhat to allay the rather exaggerated misgivings which many corporate fiduciaries seem to experience when it is suggested that they perform other than purely clerical and routine duties.

As the court understands the matter, the rules noted in *Matter of Pollock* and similar cases are to be applied with even greater liberality in favor of a fiduciary who lawfully retains non-legal investments made by a testator, in the reasonable expectation that they may regain some of their depreciated value, particularly in abnormal times like the present.

In view of the fact that the items of jewelry in question possess little intrinsic but considerable sentimental value, the court concurs in the request of all parties who are *sui juris,* and of the special guardian for the infants, that they be delivered to the testamentary guardian upon her qualification, to be distributed in kind among the infant children of testatrix when the proper time therefor shall have arrived.

Proceed accordingly.