In the Matter of the Estate of CHARLES LULING, Deceased.

Surrogate's Court, Richmond County, February 28, 1941.

*Gould & Wilkie,* for the petitioner.

*William A. Smith,* special guardian.

BOYLAN, S. This is an accounting proceeding in which the trustees also seek a construction of the last will and testament of decedent. The special guardian has requested that the court first construe the will in order that he may properly be guided with respect to many items in the account.

Charles Luling died on December 7, 1877, leaving a last will and testament dated October 23, 1860. He duly executed several codicils to this will but these have no bearing on the questions before the court. All of the children of the testator were under the age of twenty-one at the time of the execution of the first codicil to the last will and testament of said decedent on February 24, 1876, and were under the age of twenty-one at the time of the death of the testator on December 7, 1877. This will established a trust of the residuary of his estate, income to be paid to the testator's widow, Elena M. Luling, during her lifetime and upon her death the corpus to be divided into as many shares as there were children of testator surviving the death of the widow, and the income and profits thereof to be paid to each of said children for life and upon the death of each child, the will then directed termination of such share of the trust as follows: " And I direct my surviving executors to accumulate, during her minority, the unapplied income and add the accumulations thereof to the capital of the property so bequeathed, and upon her death to pay, transfer and set over said share (and I so give and bequeath the same) to her children living at the time of her death, and to the issue then living of her children then dead, to be equally divided between them, such issue to stand in the place of his, her or their parent, and in case no such child, children or issue shall be living at the time of the death of such my daughters then to such person as she by her last will or by writing or appointment executed in the presence of at least two witnesses, notwithstanding her coverture,

may direct or appoint, and in default of such will, writing or appointment to the survivors or survivor of my said children, the issue of any deceased child to represent his, her or their parent, and if there should be no such child or children of mine, nor their issue be living at the time of the death of my daughter, then to my brothers and sisters, and to the survivors or survivor of them, to be equally divided between them, the child or children of either of them deceased, to take the share of his, her or their parent."

Testator's original executors and trustees were Elena M. Luling, his widow, and Louise H. Meyer and William Toll, friends and business associates. These trustees were approximately the same age as testator. Prior to 1901 the widow and Meyer died. The surviving executor and trustee, William Toll, filed his account in 1901, which account was settled by a decree dated March 29, 1901, which decree appointed Theodore W. Luling (decedent's son) and the Knickerbocker Trust Company (now the Irving Trust Company) successor trustees, William Toll having requested to resign and the court having granted his request. The successor trustees have acted continuously since that date and have now filed their account.

One-third of the trust held for the three daughters is to be distributed pursuant to this accounting because of the death of Mrs. Rathbone.

The powers of the trustees are set forth in article " Third " of testator's will and are as follows·" In trust nevertheless, and to, and for, and upon the following uses and purposes, and with the following powers, of and concerning the same, that is to say; to convert the same into money, and to sell and dispose of all and singular my estate which I have not devised and bequeathed, in the foregoing clause, both real and personal, not consisting of moneys invested in stocks, funds, or securities yielding income, at any time, and in such a manner, either by public Auction or private sale, as they may deem advisable and to deliver good and sufficient conveyances thereof, to vest the same in the purchasers, and ' to invest the proceeds, either on bond and mortgage, upon unencumbered real estate, or in the public stocks or bonds of the United States, or of any one of the States, or of any public or private corporation or company, either in the United States or in Europe, as in their, his or her discretion, they, he or she shall deem advisable, with power to call in and vary any investment or investments they may make from time to time, or which I have made at the time of my death, and to reinvest the fund or funds so called in, in any manner they may deem advisable, provided however that they shall not invest any of said funds in any manufacturing

stock, or in any mercantile risks or business, except as hereinafter mentioned.' "

The first question that must be decided by the court is whether or not the testator intended that the discretionary powers of investment provided in the will should be enjoyed by the successor trustees to the same extent as by the trustees named in the will.

Whether or not the testator intended to limit the exercise of the specific power of investment to the original trustees named in the will must be gathered from the language of the will and the circumstances existing at the time the will was prepared. (*Matter of Neil*, 238 N. Y. 138.) Surrogate FOLEY in *Matter of Brown* (155 Misc. 620, 621) stated the rule for determining questions as to whether the discretionary powers devolved to successor trustees as follows: " The rule in determining questions of this nature is if the power conferred on the original fiduciary is personal and confidential the power will not pass to a successor. But if the power is incidental to the administration of the trust and the accomplishment of the testator's purpose the power devolves upon the successor to the original fiduciary. The ascertainment and the effectuation of the testator's intention, therefore, governs the determination of this question as in all other questions of construction."

The question of discretionary investments was considered in *Matter of Storts* (142 Misc. 54). The trustee, who was given full power to sell any and all property and to invest the proceeds as he deemed best, did not qualify and a substituted trustee was appointed. In holding that the discretionary powers were vested in the substituted trustee, the surrogate said: " In view of the circumstances of the estate, the advanced age of the trustee named and the probability that the term of at least some of the trusts will extend beyond his life, the court is of opinion and determines that it was the intention of testatrix that a possible successor trustee should be fully vested with the broad discretionary powers granted by her to the original trustee in the portion of the will quoted."

In *Matter of White* (135 Misc. 377) Surrogate WINGATE suggested conditions which are indicative of the intention of a testator to continue discretionary powers in the substituted trustees. These conditions are:

" Pertinent circumstances which have been considered as indicating an intent on the part of testator that such power is to continue, are

" (a) Where the discretion is based upon facts which may be determined in the ordinary course of judicial inquiry;

" (b) Where a contrary determination would result in a defeat of the entire testamentary plan;

" (c) Where the discretion relates merely to a power to sell trust property;

" (d) Where one of the original trustees named was a trust company;

" (e) Where the discretion, if exercised, would be for the benefit of the primary objects of testator's bounty;

" (f) Where it is clear that testator must have realized that the emergency calling for the exercise of the discretion, might, in the natural course of events, arise at a time when none of the trustees originally named were in office."

From a reading of the will it is clear to the court that the testator contemplated that the trusts would continue beyond the lives of the original trustees. The testator extended the powers beyond legal investments and provided for continued holding of securities owned by him at his death and gave broad discretionary powers of investment. The testator is deemed to have intended that his estate should be administered to the best interests of the beneficiaries, the natural objects of his bounty. There are three individual trustees named in the will which does not contain any provisions restricting the discretionary powers to the executors and the trustees named. The mere naming by a testator of more than one individual trustee indicates an intention to have the powers granted to the original trustees pass to successor or substituted trustees. If this were not so, an anomalous situation would arise if one or more of the trustees did not qualify, or if they did qualify and die. The original trustees would have discretionary powers but the substituted trustees would not. The trustees then in charge of the fund would be vested with different powers and would be subject to different liabilities.

This court holds that the substituted trustees are vested with the same discretionary powers as the original trustees.

The court construes article " Third " of the will as giving the trustees discretionary powers to invest in any bonds or stocks which such trustees shall deem advisable, whether or not the same are legal investments for trustees under the laws of the State of New York, provided that such investments shall not include " manufacturing stock " or " mercantile risks or business."

In the Third article of his will the testator permitted the trustees to invest in " *public stocks or bonds* (italics mine) of the United States or any of the States or of any *public or private corporation or company* (italics mine) * * *, provided they shall not invest any of said funds in any manufacturing *stock* (italics mine) * * *." It is obvious the testator intended to place no prohibition on investment in bonds of manufacturing companies but did prohibit the investment in *stocks* of manufacturing companies.

The substituted trustees have requested a construction that the prohibition against " manufacturing stock " does not forbid the investment in stocks of public utility corporations, such as railroads, gas and electric companies. The court declines to pass upon the question presented by this request, since it can always be determined what manufacturing stock is by a study of the law. Whether or not public utility companies are engaged in manufacturing may depend upon the facts and circumstances in the given case.

The special guardian is granted ten days after the service of a copy of the decree on this construction to file objections to the account.

Submit decree on notice.