Louis S. Wallach, M.
The defendant was charged with being a disorderly person, and is alleged to have violated subdivision 3 of section 899 of the Code of Criminal Procedure.
The issue involved herein is one of law, since the defendant offered no proof at the end of the People’s case and rested upon the whole case and relied upon the presumption of innocence and the correlated duty cast upon the People to prove her guilty beyond a reasonable doubt.
The facts elicited, briefly, are as follows: On November 5, 1956, at about one o’clock in the afternoon of that day, the complainant, a policewoman, called at the tearoom premises of the defendant at 233 Duffield Street, Brooklyn, New York, and ordered a lettuce and tomato sandwich and a cup of tea. After her “ repast,” the complainant was escorted over to a table where the defendant was seated, and the defendant spread cards in front of the complainant, and proceeded to predict *530 the future course of events in the life of the complainant, observing very prophetically that the review of the cards in the hands of the defendant indicated that the same looked very good for her, telling her of the forthcoming mixed happy events in her life, and that she (the complainant), was the first customer that she (the defendant) had had for the day.
As the complainant proceeded to leave, she noticed a plate with 50 cents on the side of it, which was placed before her.
The complainant thereupon also left 50 cents, although the defendant did not ask or request this fee in question. All that the defendant did was to set up the proverbial “ props ” for a contribution by the complainant, of the same or similar sum, or for that matter, any sum, depending upon the self-will of the hearer of the prognostications as to future events by the defendant.
The proof also indicated that there was a sign on the wall of this particular tearoom which indicated that readings were for pleasure and for fun only, and this same characterization of the act of ‘ ‘ soothsaying ’ ’ by the defendant was contained on the menu, which read: “Free readings for entertainment and amusement also. No charge. In requesting a free reading, whatever is told you is in the spirit of fun and amusement only and in no way to be considered as fortune telling.'” (Italics supplied.)
Additionally, on a slip of paper signed by the complainant, the following was contained thereon:
“ Scotch Tearoom & Ltjwcheoh
‘ ‘ I, being of full mind and intelligence, and knowing full well that future events cannot be predicted, or foretold, by requesting this free character reading agree that it shall in no way be interpreted by me, nor does it represent the telling or prediction of the future; that it is being given to, and accepted by me solely and only for my entertainment and amusement and no fee has been requested or charged therefor; and that I have read, do understand and agree to the statements made herein.” (Italics supplied.)
The defendant, in having rested at the end of the People’s case, after motions were made by her to dismiss the complaint upon grounds that the People failed to prove the guilt of the defendant, decision in connection therewith had been reserved by the court, contended, amongst other things that (a) the wording of the statute; as well as (b) the definitive, exculpatory written clause signed by the complainant, precluded the defendant from being adjudged guilty.
*531 For the sake of clarity, the statute in question provides, as follows:
“ Section 899: The following are disorderly persons:
C Í # # %
a 2 * # *
“ 3. Persons pretending to tell fortunes, or where lost or stolen goods may be found; but this subdivision shall not be construed to interfere with the belief, practices or usages of an incorporated ecclesiastical governing body or the duly licensed teachers or ministers thereof acting in good faith and without personal fee, nor shall it be construed to prohibit or prevent any show, trick, feat, display or other act or exhibition, performed by a magician or mentalist for the purpose of amusement or entertainment and without personal fee;”.
Historically, the statue in question, originally, was contained in the Revised Statutes and ultimately found its way into the body of the present code. It was amended in 1929, and thereafter further amended in 1949 (ch. 803, eff. April 25, 1949), so as to take from the orbit of its applicability, insofar as penal offenses are concerned, the acts performed by magicians or mentalists, for the purpose of amusement and entertainment and without personal fee.
Great reliance is placed by the defendant upon the exculpatory provision, signed by the complainant at her behest, in an attempt to seek to relieve and insulate her of the consequences of her act and to detract from its element of wrongdoing. However, an analysis of the statute, its prime social objective, and the reason for its enactment and enforcement, leads the court to the irresistible conclusion that the purpose, amongst other things, for which the statute was brought into esse, was to prevent the ignorant and the gullible, as well as the curious, from being ensnared by the guiles and the fantasies of those who profess, be it for amusement or otherwise, to be able to “ crystal gaze ” as to the course of future events and occurrences in the lives of those who come to them for mental assurances or in satisfaction and fulfillment of their perverted sense of curiosity. Experience has indicated that, generally, the role of the “ soothsayer ” is, under the circumstances, the forerunner to victimization of the hearer by the “ crystal gazer ”, and constitutes very fertile spawning grounds for the commission of substantial larcenies, by trick and device, and the resultant deprivation and ensnarement of property or life savings through this very instrumentality. This was, of course, one of the prime reasons for outlawing fortune telling by the Legislature, and the prediction of events or occurrences, so that *532 the evil that sets in as a result of untrammeled traffic in this sort of activity, might thus be obviated.
It is of no consequence whether or not the defendant claims or pretends innocently or fraudulently that her predictions are reliable (People v. Ashley, 184 App. Div. 520; Fay v. Lambourne, 124 App. Div. 245, affd. 196 N. Y. 575; People v. Malcolm, 90 Misc. 517, 520; People v. Strong, 183 Misc. 291, 292); nor is it of any moment or defense that the transgressor here has sought to clothe herself with this self-created immunity through written documentation of her alleged innocent intentions in regard to this form of activity. (People v. Hoffman, Flushing, Queens, Magistrates’ Court, Docket No. 3106/1949, Korn, M.)
The mere doing of the act, under the circumstances, whether well-intentioned or not, if done, is sufficient for a finding by the court that the statute has been violated. (People v. Brossard, 33 N. Y. S. 2d 369; People v. Granger, Rockaway, Queens, Magistrates’ Court, Docket No. 204/1938, Horn, M.)
Only where the party making the prediction comes within the exception of the statute, such as those performing practices or usages in conformity with a religious order, or a mentalist or a magician, performing his feat of theatrics, without fee, may it be said that no aura of wrong may be attached thereto.
Certainly, the defendant here does not suggest or claim that she comes within the purview of the exceptions, concerning which, under these circumstances, it would be incumbent upon her, as a matter of proof, to demonstrate that she is excluded from the ambit of the statute (People v. Rockwell, 123 N. Y. S. 2d 201, 203-204).
The stress sought to be placed by the defendant, creditability-wise, upon the issue of whether or not the complainant paid a fee, be it originally not mentioned in the information, or later first brought to light upon the trial, is of little moment, since the exaction of a fee is not the decisive factor in evaluation of the proof as to guilt or innocence of violation of the statute, under the circumstances herein disclosed.
"Were the payment of a fee of any substance, the statute, in plain language, would have so specifically provided, and the burden thereof would have been cast upon the People to prove the same as part of its affirmative case. It is not difficult to understand when one views the broad perspective of the beneficent social objectives of the statute and the evils sought to be curtailed thereby, that the payment of a fee, under the facts *533 disclosed herein, is inconsequential and collateral to the issue of g-uilt or innocence of violation of the law in question.
So, too, the cases cited by the defendant to support her contentions are found either, not applicable to the facts herein, or not germane to the pertinent specific questions of law herein involved. On that account, they afford no haven of refuge from guilt in connection with the matter under consideration.
The court also takes judicial notice of the fact that payment by the complainant of $1.50 for a lettuce and tomato sandwich and a cup of tea only, dispensed in an ordinary tearoom, even in these days of the inflated value of the dollar, aside from the format of the plate with a 50 cent-piece thereon and the posted sign and the ‘ exculpability ’ ’ clause signed by the complainant, all, when considered together, clearly indicate that the tearoom herein was merely a front for the activities of the defendant in attempting to do that which the statute states, despite these trappings and ensemble, is wrong.
Upon the whole case, I find that the acts and conduct of the defendant in doing that which has been charged to have been committed by her, in the information, constitutes a violation of the section under which she has stood trial; that the presumption of innocence inurable to her has been wholly dissolved by my finding, upon all the evidence, that the People have proven her guilty beyond a reasonable doubt.
I find the defendant guilty.